# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | Crim. ID Nos. 2110001695 |
| | ) | 1511001714 |
| CLAY L. DEPUTY, | ) | 0609012387A |
| TROY E. GEE, | ) | 0802023870 |
| ORIN L. TURNER, and | ) | |
| DAVID R. WRIGHT. | ) | |

Submitted: March 23, 2026
Decided: June 29, 2026

*Upon Defendants' Varied Motions for Sentencing Relief or
in the Alternative to Certify Questions of Law,*
**DENIED**.

## OPINION AND ORDER

Patrick J. Collins, Esquire, COLLINS PRICE WARNER WOLOSHIN, Wilmington, Delaware, *Attorney for All Defendants*.

Brian L. Arban, Esquire (*argued*), Matthew C. Bloom, Esquire, Deputy Attorneys General, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware, *Attorneys for the State of Delaware*.

**WALLACE, J.**

There is a familiar ebb-and-flow to criminal litigation and the development of criminal law. Once convicted and sentenced, many search for a channel—however narrow—to escape the consequences of the conviction or sentence entered against them. Most such ventures fail because the law places a high premium on finality. Changes in doctrine don't ordinarily reopen cases already concluded. Yet when the United States Supreme Court sets a landmark suggesting a new (or arguably new) constitutional rule—even one limited in scope—it is inevitably followed by a wave of filings from those convinced that the decision must apply to them as well. This case concerns such a "new rule" and the challenges that have resulted.

At the end of its 2024 term, the United States Supreme Court decided *Erlinger v. United States*.[1] In *Erlinger*, the defendant, Paul Erlinger, had been sentenced under the federal Armed Career Criminal Act ("ACCA"), which prescribes enhanced statutory penalties when a defendant has three qualifying prior felony convictions for crimes "committed on occasions different from one another[.]"[2] Mr. Erlinger argued that whether his prior offenses occurred on separate occasions was a factual determination that must be submitted to a jury.[3] The federal trial court ultimately rejected that argument and sentenced Mr. Erlinger under the ACCA.[4] The

---

[1]   602 U.S. 821 (2024).

[2]   *Erlinger v. United States*, 602 U.S. 821, 825 (2024); 18 U.S.C. § 924(e)(1) (2024).

[3]   *Erlinger*, 602 U.S. at 825–26.

[4]   *Id.*

Supreme Court reversed.[5] The Court held that Mr. Erlinger "was entitled to have a jury resolve ACCA's occasions inquiry unanimously and beyond a reasonable doubt," and expressly stated that it was "decid[ing] no more than that."[6]

Thereafter, scores of incarcerated Delaware defendants who had previously been convicted and sentenced under statutes incorporating recidivist enhancements began incanting *Erlinger* as a basis for relief from their convictions or sentences.[7] They argue that they, too, should have had a jury determine the utility of their prior convictions when they received their statutorily-enhanced sentences. These filings have arrived via varied procedural vessels, including motions under Superior Court Criminal Rule 35, petitions for postconviction relief under Rule 61, and a miscellany of collateral challenges to sentences that had become final well before *Erlinger* had been decided.[8]

---

[5] *See generally id.*

[6] *Id.* at 833.

[7] And as oft happens in like circumstances, there have been a raft of filings spouting *Erlinger* where *Erlinger* is wholly inapplicable because there had been no increase in the statutorily-prescribed range of penalties in the inmates' cases. *See, e.g., Johnson v. State*, 2025 WL 2452107 (Del. Aug. 25, 2025); *Wheeler v. State*, 2025 WL 3296176 (Del. Oct. 2, 2025); *Krafchick v. State*, 2025 WL 2925378 (Del. Oct. 14, 2025); *Phillips v. State*, 2025 WL 1693652 (Del. 16, 2025); *State v. Johnson*, 2025 WL 1431003 (Del. Super. Ct. May 19, 2025); *State v. Fields*, 2025 WL 1823775 (Del. Super. Ct. June 30, 2025); *State v. Northern*, 2026 WL 296289 (Del. Super. Ct. Feb. 4, 2026); *State v. Kellum*, 2026 WL 882813 (Del. Super. Ct. Mar. 31, 2026).

[8] As explained more fully below, following consultation between the parties, the Court approved the joint selection of bellwether cases to facilitate the orderly resolution of numerous *Erlinger*-based claims. The parties jointly selected the cases of Clay L. Deputy, Crim. ID No. 2110001695; Troy E. Gee, Crim. ID No. 1511001714; Orin L. Turner, Crim. ID No. 0609012387A; and David R. Wright, Crim. ID No. 0802023870. Because the relevant filings in these bellwether cases are substantively identical, citations refer to Mr. Deputy's docket unless otherwise indicated.

# I. THE BELLWETHER DEFENDANTS

In response to the swell of *Erlinger*-based claims, the Delaware Office of Conflict Counsel sought appointment of counsel to represent these defendants.[9] The Court then conferred with the parties' counsel to address how to best manage and resolve the postconviction proceedings in an orderly and consistent manner.[10] Following consultation between the parties, the Court allowed the parties to jointly select bellwether cases and propose a briefing schedule.[11] The parties jointly selected four cases for that purpose: the motions filed by Clay L. Deputy, Troy E. Gee, Orin L. Turner, and David R. Wright (collectively, the "Defendants" or "Bellwether Defendants").[12] The Court accepted these cases as, taken together, they fairly reflect the range of procedural backgrounds and threshold issues presented by *Erlinger*-based challenges in Delaware.

The Court entered an Omnibus Scheduling Order and Order Staying Further Proceedings.[13] That Order stayed all non-bellwether *Erlinger* cases that were assigned to the undersigned pending resolution of the representative matters and

---

[9]  D.I. 32.

[10]  D.I. 29.

[11]  *Id.*

[12]  D.I. 30. Again, the Docket Numbers are: Clay L. Deputy, Crim. ID No. 2110001695; Troy E. Gee, Crim. ID No. 1511001714; Orin L. Turner, Crim. ID No. 0609012387A; and David R. Wright, Crim. ID No. 0802023870.

[13]  D.I. 31.

established a consolidated briefing schedule for the selected cases.[14] The parties completed briefing in accordance with that schedule. Since, the Court has heard oral argument[15] and received supplemental filings on certain discrete issues.[16] This Opinion resolves the consolidated, briefed, and argued issues in the Bellwether Cases. In doing so, the Court does its best to address the questions common to postconviction *Erlinger* claims and set forth the governing principles applicable to similarly situated defendants.

## A. CLAY L. DEPUTY – CRIMINAL ID. NO. 2110001695

On January 9, 2023, Mr. Deputy pleaded guilty to the charges of possession of a firearm during the commission of a felony ("PFDCF") and drug dealing.[17] This Court sentenced him to an unsuspended term of eight years of imprisonment.[18] Mr. Deputy's sentence was enhanced under 11 *Del. C.* § 1447A(c), requiring him to serve a minimum mandatory prison term of five years for PFDCF because he had at least two prior felony convictions.[19]

---

[14] *Id.*

[15] D.I. 39.

[16] D.I. 40–41, 45–46.

[17] Plea Agreement, *State v. Clay L. Deputy*, Crim. ID. No. 2110001695 (Del. Super. Ct. Jan. 9, 2023) (D.I. 11); *see also* Amend. Sentence Order, *State v. Clay L. Deputy*, Crim. ID. No. 2110001695 (Del. Super. Ct. Sept. 6, 2023) (D.I. 22).

[18] Amend. Sentence Order, *State v. Clay L. Deputy*, Crim. ID. No. 2110001695 (Del. Super. Ct. Sept. 6, 2023) (D.I. 22).

[19] *Id.*; *see also* DEL. CODE ANN. tit. 11, § 1447A (2021) ("A person convicted [of PFDCF], and who has been at least twice previously convicted of a felony in this State or elsewhere, shall receive

Almost two years later, Mr. Deputy filed a *pro se* Motion for Correction of Illegal Sentence citing this Court's Rule 35.[20]  He contends that his plea shouldn't have been accepted by the Court and the prior convictions that enhanced his PFDCF sentence were required to have been found by a jury beyond a reasonable doubt as part of his sentencing.[21]

## B. TROY E. GEE – CRIMINAL ID. NO. 1511001714

On March 16, 2017, Mr. Gee pleaded guilty to assault in the first-degree, PFDCF, two counts of conspiracy, and possession of a firearm by person prohibited ("PFBPP").[22]  This Court sentenced him to a cumulative term that included 14 unsuspended years of imprisonment.[23]  A portion thereof was the result of an enhancement prescribed by 11 *Del. C.* § 1448(e)(1)(b) that requires him to serve a minimum mandatory prison term of five years for the PFBPP count because Mr. Gee had a prior violent felony conviction within the ten years preceding these crimes.[24]

---

a minimum sentence of 5 years at Level V").

[20]  Clay L. Deputy's Mot. for Correction of an Illegal Sentence, *State v. Clay L. Deputy*, Crim. ID. No. 2110001695 (Del. Super. Ct. Dec. 18, 2024) (D.I. 24); *see also* Del. Super. Crim. R. 35.

[21]  Clay L. Deputy's Mot. for Correction of an Illegal Sentence, at 6.

[22]  Plea Agreement, *State v. Troy E. Gee*, Crim. ID. No. 1511001714 (Del. Super. Ct. Mar. 16, 2017) (D.I. 51).

[23]  Sentence Order, *State v. Troy E. Gee*, Crim. ID. No. 1511001714 (Del. Super. Ct. May 26, 2017) (D.I. 62).

[24]  *Id.*; *see* DEL. CODE ANN. tit. 11, § 1448(e)(1)(b) (2015) (stating that the minimum for PFBPP becomes "[f]ive years at Level V, if the person does so within 10 years of the date of conviction for any violent felony or the date of termination of all periods of incarceration or confinement imposed pursuant to said conviction, whichever is the later date").

In 2025, Mr. Gee filed his *pro se* Motion for Correction of Illegal Sentence under this Court's Criminal Rule 35.[25] He argues, among other things, that his prior conviction that led to his enhanced sentence could only have been found as a fact by a jury, and therefore his sentence was illegal when imposed.[26] Substantively, Mr. Gee also argues that his guilty plea—even if relevant—is a defective waiver of his rights because "pleading guilty . . . did not directly address the circumstances surrounding [his] prior violent felony conviction or applicable minimum sentence exposure."[27]

## C. ORIN L. TURNER – CRIMINAL ID. NO. 0609012387A

On October 19, 2007, a jury found Mr. Turner guilty of first-degree assault, aggravated menacing, second-degree burglary, first-degree reckless endangering, carrying a concealed deadly weapon, and four counts of PFDCF.[28] On the State's motion, the Superior Court declared Mr. Turner to be a habitual criminal offender pursuant to then-extant 11 *Del. C.* § 4214(a).[29] Mr. Turner was sentenced to serve

---

[25] Troy E. Gee's Mot. for Correction of Illegal Sentence Pursuant to Super. Ct. Crim. R. 35(a), *State v. Troy E. Gee*, Crim. ID. No. 1511001714 (Del. Super. Ct. Jan. 15, 2025) (D.I. 66); *see also* Del. Super. Crim. R. 35.

[26] *See generally* Troy E. Gee's Mot. for Correction of Illegal Sentence Pursuant to Super. Ct. Crim. R. 35(a).

[27] *Id.*

[28] Jury Verdict, *State v. Orin L. Turner*, Crim. ID. No. 0609012387A (Del. Super. Ct. Oct. 19, 2007) (D.I. 54).

[29] Habitual Criminal Petition, *State v. Orin L. Turner*, Crim. ID. No. 0609012387A (Del. Super. Ct. Nov. 16, 2007) (D.I. 58); Order Declaring Def. a Habitual Offender, *State v. Orin L. Turner*,

two terms of life imprisonment and an additional seventy-eight years.[30]

More than 17 years into his sentence, Mr. Turner filed a *pro se* Motion for Post Conviction Relief under this Court's Criminal Rule 61.[31] Mr. Turner asserts a number of violations of his rights.[32] Among those, he argues that *Erlinger* applies to him retroactively—that is, his sentencing based upon prior convictions violated his due process rights because they were not found by a jury of his peers.[33]

### D. DAVID R. WRIGHT – CRIMINAL ID. NO. 0802023870

In November 2008, a jury found Mr. Wright guilty of first-degree robbery, second-degree kidnapping, PFDCF, possession of a deadly weapon by a person prohibited ("PDWBPP"), and wearing a disguise during the commission of a felony.[34] Prior to sentencing, the State had moved to have Mr. Wright's habitual

---

Crim. ID. No. 0609012387A (Del. Super. Ct. Dec. 13, 2007) (D.I. 62); *see* DEL. CODE ANN. tit. 11, § 4214(a) (2006) ("[A]ny person sentenced pursuant to this subsection shall receive a minimum sentence which shall not be less than the statutory maximum penalty provided elsewhere in this Title for the fourth or subsequent felony which forms the basis of the State's petition to have the person declared to be an habitual criminal except that this minimum provision shall apply only when the fourth or subsequent felony is a Title 11 violent felony, as defined in § 4201(c) of this title.").

[30] Corrected Sentence Order, *State v. Orin L. Turner*, Crim. ID. No. 0609012387A (Del. Super. Ct. Mar. 3, 2008) (D.I. 72).

[31] Orin L. Turner's Mot. for Post Conviction Pursuant to Del. Super. Ct. Crim. R. 61, *State v. Orin L. Turner*, Crim. ID. No. 0609012387A (Del. Super. Ct. Nov. 4, 2024) (D.I. 163); *see also* Del. Super. Crim. R. 61.

[32] *See generally* Orin L. Turner's Mot. for Post Conviction Pursuant to Del. Super. Ct. Crim. R. 61.

[33] *Id.*

[34] Jury Verdict, *State v. David R. Wright*, Crim. ID No. 0802023870 (Del. Super. Ct. Nov. 14, 2008) (D.I. 30).

-8-

criminal status applied to each of his five convictions.[35] The Court granted that motion.[36] Resultingly, Mr. Wright is serving a 74-year cumulative sentence,[37] the first 65 years of which were required to be imposed under then-extant 11 *Del. C.* § 4214(a).[38]

In December 2024, Mr. Wright filed a *pro se* Motion to Vacate Illegal Sentence.[39] Mr. Wright argues that his sentence is illegal because he had a right to a jury determination of his prior offenses before his sentencing.[40]

---

[35] Habitual Criminal Petition, *State v. David R. Wright*, Crim. ID No. 0802023870 (Del. Super. Ct. Jan. 6, 2009) (D.I. 32).

[36] Order Declaring Def. a Habitual Offender, *State v. David R. Wright*, Crim. ID No. 0802023870 (Del. Super. Ct. Jan. 9, 2009) (D.I. 33).

[37] Sentence Order, *State v. David R. Wright*, Crim. ID No. 0802023870 (Del. Super. Ct. Jan. 9, 2009) (D.I. 34).

[38] DEL. CODE ANN. tit. 11, § 4214(a) (2007) (providing for a minimum mandatory sentence equal to the statutory maximum for each violent Title 11 triggering felony); *id.* at §§ 832, 4201(c) and 4205(b)(2) (declaring that a maximum sentence for first-degree robbery, a violent class B felony, was 25 years at Level V at the time of defendant's crimes); *id.* at §§ 1447, 4201(c) and 4205(b)(2) (declaring that a maximum sentence for PDWDCF, a violent class B felony, was 25 years at Level V at the time of defendant's crimes); *id.* at §§ 783, 4201(c) and 4205(b)(3) (declaring that a maximum sentence for the violent class C felony of second-degree kidnapping was, at the time of defendant's crimes, 15 years at Level V); and *id.* at § 3901(d) (providing at the time of defendant's crimes, no sentence of confinement for any crime could be made to run concurrently with any other sentence of confinement imposed).

Where the State files a substantively adequate motion for application of one's habitual offender status and that motion becomes the basis for a finding of the existence of his habitual offender status, this Court must apply that habitual offender status to each specific count—no more or no less—advanced by the State. *Kirby v. State*, 1998 WL 184492, at *2 (Del. Apr. 13, 1998); *Reeder v. State*, 2001 WL 355732, at * 3 (Del. Mar. 26, 2001); *Hawkins v. State,* 2002 WL 384436, at *2 (Del. Mar. 6, 2002); *Johnson v. State*, 2002 WL 1343761, at *2 (Del. June 18, 2002).

[39] David R. Wright's Mot. to Vacate Illegal Sentence, *State v. David R. Wright*, Crim. ID No. 0802023870 (Del. Super. Ct. Dec. 9, 2024) (D.I. 110); Del. Super. Crim. R. 35.

[40] David R. Wright's Mot. to Vacate Illegal Sentence.

## II. THE *ERLINGER* DECISION

### A. *ERLINGER* PREDECESSORS AND ORIENTATION

A substantial body of caselaw has grappled with the proper role of judges in light of a defendant's Sixth Amendment right to have a jury determine facts beyond a reasonable doubt and the many statutes that raise the minimum and maximum penalties for those with prior convictions. A navigation of several key United States Supreme Court decisions assists in getting one's bearings here.

The Court begins with the ruling perhaps most debated and likely most directly implicated by *Erlinger*: the 1998 case of *Almendarez-Torres v. United States*.[41] Therein, the Supreme Court examined federal sentencing provisions applicable to individuals who unlawfully reentered the United States following an

---

[41] 523 U.S. 224 (1998); *see* Jennifer Lee Barrow, *The Return of the Jury: Conduct-Based Sentencing for Recidivism*, 2022 WIS. L. REV. 785, 795–05 (2022) (conducting an appraisal of *Almendarez-Torres* just before *Erlinger* was decided); *United States v. Mack*, 229 F.3d 226, 238 (3d Cir. 2000) (The Third Circuit's then-Chief Judge discussing his various issues with *Almendarez-Torres*, but stating "I do not suggest that we should predict that the Court will overturn *Almendarez-Torres*.") (Becker, C.J., concurring); *see also id.* at 229 n.5. Not only has *Almendarez-Torres* been questioned by academics and other courts, but the Supreme Court itself has had captious words about the decision. *Apprendi v. New Jersey*, 530 U.S. 466, 487 (2000) (calling *Almendarez-Torres* "at best an exceptional departure from [ ] historic practice"); *Shepard v. United States*, 544 U.S. 13, 27 (2005) ("*Almendarez-Torres* . . . has been eroded by this Court's subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that *Almendarez-Torres* was wrongly decided.") (Thomas, J., concurring in part and concurring in the judgment); *Pereida v. Wilkinson*, 592 U.S. 224, 238 (2021) (quoting *Apprendi*, 530 U.S. at 489–90) ("[W]e have remarked that 'the fact of a prior conviction' supplies an *unusual* and '*arguable*' exception to the Sixth Amendment rule in criminal cases that 'any fact that increases the penalty for a crime' must be proved to a jury rather than a judge.") (emphasis added); *Erlinger*, 602 U.S. at 837 (citing *Apprendi*, 530 U.S. at 490 (2000)) ("[*Almendarez-Torres*] parted ways from the 'uniform course of decision during the entire history of our jurisprudence.'").

earlier removal.[42] The statutory scheme permitted enhanced penalties if the defendant had previously been convicted of an aggravated felony.[43] The Supreme Court held the statute "simply authorize[d] a court to increase the sentence for a recidivist" and did "not define a separate crime."[44] Thus, said the Court, the use of prior convictions in such recidivist sentencing didn't require additional fact-finding.[45] Importantly, the Supreme Court expressly declined to overrule *Almendarez-Torres* in *Erlinger*—it instead trimmed it.[46]

The next integral case came in 2000: *Apprendi v. New Jersey*.[47] There, Charles Apprendi used a firearm to shoot into the home of an African-American family that had moved into an all-white neighborhood.[48] After pleading guilty, the sentencing judge enhanced Mr. Apprendi's sentence under New Jersey law after finding, by a preponderance of the evidence, that the offense was racially motivated.[49] The Supreme Court reversed, holding that—other than the fact of a

---

[42]  *Almendarez-Torres*, 523 U.S. at 226–28.

[43]  *Id.* at 230–34.

[44]  *Id.* at 226.

[45]  *See generally Almendarez-Torres*, 523 U.S. 224.

[46]  *Erlinger*, 602 U.S. at 844 (stating that the *Almendarez-Torres* rule now "persists as a 'narrow exception' permitting judges to find only 'the fact of a prior conviction'") (quoting *Alleyne v. United States*, 570 U.S. 99, 111 n.1 (2013)).

[47]  530 U.S. 466 (2000).

[48]  *Apprendi*, 530 U.S. at 469.

[49]  *Id.*

prior conviction—any fact that increases a defendant's penalty beyond the prescribed statutory maximum must be submitted to a jury and proven beyond a reasonable doubt.[50]  In so holding, the Supreme Court refused to reject the prior-conviction exception established in *Almendarez-Torres*.[51]

The Court extended its *Apprendi* reasoning in 2013 when it decided *Alleyne v. United States*.[52]  Whereas *Apprendi* addressed judicial factfinding that increased a statutory maximum, *Alleyne* concerned judicial factfinding that increased a mandatory minimum sentence.[53]

Allen Alleyne was convicted of using or carrying a firearm during a crime of violence.[54]  Federal law increased the mandatory minimum sentence if the firearm was "brandished."[55]  The federal trial judge found that Mr. Alleyne had brandished a weapon during such a crime and imposed the enhanced minimum sentence.[56]  The Supreme Court reversed, holding that any fact that increases a prescribed statutory

---

[50]  *Id.* at 490–92.

[51]  *Id.* at 490 ("[W]e need not revisit [*Almendarez-Torres*] for purposes of our decision today to treat the case as a narrow exception to the general rule we recalled at the outset.").

[52]  570 U.S. 99 (2013).

[53]  *Compare Apprendi*, 530 U.S. at 490–92 *with Alleyne*, 570 U.S. at 103 ("[Under *Apprendi*, m]andatory minimum sentences increase the penalty for a crime.  It follows, then, that any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury.").

[54]  *Alleyne*, 570 U.S. at 103–04.

[55]  *Id.*

[56]  *Id.*

minimum sentence must also be found by a jury beyond a reasonable doubt.[57]

These decisions established the framework of jury-judge determinations. As a general matter, any fact that increases a defendant's statutorily prescribed range of punishment must be found by a jury beyond a reasonable doubt, but for one exception: *Almendarez-Torres*. *Almendarez-Torres* permits a sentencing judge to find the fact of a prior conviction when such a conviction is a determiner of statutory exposure to enhanced punishment on the minimum or maximum end.

## B. SUMMARY OF THE *ERLINGER* DECISION

In 2017, Paul Erlinger pleaded guilty to possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g).[58] At sentencing, the federal district court determined that Mr. Erlinger qualified for an enhanced sentence under the ACCA based upon his prior criminal history.[59] Relevant to Mr. Erlinger, that transformed a ten-year statutory maximum into a fifteen-year mandatory minimum because of a finding that he had three previous convictions for violent felonies committed on occasions different from one another.[60]

The sentence didn't last. In subsequent, unrelated decisions, the Seventh

---

[57]  *Id.* at 117 ("Because the finding of brandishing increased the penalty to which the defendant was subjected, it was an element, which had to be found by the jury beyond a reasonable doubt. The judge, rather than the jury, found brandishing, thus violating petitioner's Sixth Amendment rights.").

[58]  *Erlinger*, 602 U.S. at 825–26.

[59]  *Id.* at 826.

[60]  *Id.* at 825–26; 18 U.S.C. § 924(e)(1) (2024).

Circuit held that two of the offenses supporting Mr. Erlinger's enhancement were not ACCA predicates after all.[61] The trial court vacated the sentence and ordered resentencing.[62]

At the ensuing hearing, the Government advanced a new take on Mr. Erlinger's criminal history.[63] It pointed to a series of burglary convictions more than two decades old, stemming from crimes committed over several days, and again sought imposition of the ACCA's mandatory minimum.[64] Mr. Erlinger objected. He argued that the burglaries were part of a single criminal episode and thus failed the statute's "different occasions" requirement.[65] And more critically, he contended, resolving that question demanded a factual inquiry into the circumstances of the prior offenses—an inquiry that, under the Fifth and Sixth Amendments, in his estimation, could be made only by a jury.[66]

The United States Supreme Court agreed:

> While recognizing Mr. Erlinger was entitled to have a jury resolve ACCA's occasions inquiry unanimously and beyond a reasonable doubt, we decide no more than that. For purposes of

---

[61] *Erlinger*, 602 U.S. at 826.

[62] *Id.*

[63] *Id.* at 826–27.

[64] *Id.* ("As the government told it, within a span of days Mr. Erlinger burglarized a pizza shop, a sporting goods store, and two restaurants. Because each of these burglaries occurred on different occasions, the government submitted, each could serve as an ACCA predicate and collectively they could support an ACCA sentence.") (internal citations omitted).

[65] *Id.*

[66] *Id.* at 827–28.

-14-

the proceedings before us, the parties take as given that Mr. Erlinger committed four burglaries and that each qualifies as a 'violent offense' under ACCA. But they disagree vigorously about whether those burglaries took place on at least three different occasions (so that ACCA's enhanced sentences would apply) or during a single criminal episode (so that they would not). Presented with evidence about the times, locations, purpose, and character of those crimes, a jury might have concluded that some or all occurred on different occasions. Or it might not have done so. All we can say for certain is that the sentencing court erred in taking that decision from a jury of Mr. Erlinger's peers.[67]

## C. *ERLINGER* AND THE BELLWETHER DEFENDANTS' CONVICTIONS

None of the Bellwether Defendants were sentenced under the ACCA. Each, however, received a statutory sentencing enhancement predicated upon prior convictions. And each of the relevant Delaware statutes—either by text or by judicial construction—requires proof of an element that arguably resembles the "occasions" inquiry addressed in *Erlinger*.

First, as related to Mr. Deputy, 11 *Del. C.* § 1447A—the PFDCF statute—mandates a five-year minimum sentence for a defendant "who has been at least twice previously convicted of a felony."[68] This Court has interpreted that language to require a finding that these convictions were incurred in no less than two prior and separate conviction proceedings.[69] That interpretation introduces a separateness

---

[67] *Id.* at 835.

[68] DEL. CODE ANN. tit. 11, § 1447A(c) (2021), (2025).

[69] *State v. Palmer*, 2022 WL 16641898, at *6 (Del. Super. Ct. Sept. 27, 2022) ("So bringing that

requirement analogous to the "occasions" language considered in *Erlinger*.[70]

Second, as related to Mr. Gee, 11 *Del. C.* § 1448—Delaware's PFBPP statute—contains enhancement provisions that both differ from and resemble in certain material respects the "occasions" inquiry addressed in *Erlinger*. Section 1448(e)(1)(b)—that applied to Mr. Gee—requires a five-year minimum sentence when one commits PFBPP "within 10 years of the date of conviction for any violent felony or the date of termination of all periods of incarceration or confinement imposed pursuant to said conviction, whichever is the later date[.]"[71]

Unlike the other statutes discussed in this section, that enhancement does not require a determination that prior offenses occurred on separate occasions or arose from distinct criminal episodes. Instead, the inquiry focuses on a deadline: the sentencing court must determine whether the offense to be sentenced occurred within the statutory ten-year window following a qualifying prior conviction or the termination of the sentence imposed for it.[72] Because that determination turns only on the existence of a single prior conviction and the dates reflected in the judicial

---

all together, the use of 'twice' and 'previously' to together modify 'convicted' tells the reader that there were two happenings before the present one. More simply put, to an everyday English reader the phrase would mean that the subject person was convicted of a felony in two separate conviction proceedings.").

[70] *Compare* DEL. CODE ANN. tit. 11, § 1447A(c) (2021), (2025) *with* 18 U.S.C. § 924(e)(1) (2024); *Erlinger*, 602 U.S. at 834.

[71] DEL. CODE ANN. tit. 11, § 1448(e)(1)(b) (2015), (2025).

[72] *Compare id. with* 18 U.S.C. § 924(e)(1) (2024).

record, it is substantively different than that addressed in *Erlinger*, but may well have the same Fifth and Sixth Amendment implication.[73]

Lastly, as related to Mr. Turner and Mr. Wright, Delaware's habitual criminal statute (11 *Del. C.* § 4214) prescribes heightened sentences based upon a history of prior felony convictions.[74] Delaware courts have long construed the statute to mean that the underlying convictions must arise from temporally separated criminal episodes and proceedings.[75] That determination requires more than identifying the bare fact that a defendant sustained enough prior convictions; it requires a finding

---

[73] *See Erlinger*, 602 U.S. at 838; *see also Mathis v. United States*, 579 U.S. 500, 511 (2016) ("This Court has held that only a jury, and not a judge, may find facts that increase a maximum penalty, except for the simple fact of a prior conviction.").

A second PFBPP provision, § 1448(e)(1)(c), does present a clearer *Erlinger* issue as it contains a separate provision imposing a ten-year minimum sentence where a defendant has been "convicted on 2 or more separate occasions of any violent felony." *Compare* DEL. CODE ANN. tit. 11, § 1448(e)(1)(c) (2015), (2025) *with* 18 U.S.C. § 924(e)(1) (2024); *Erlinger*, 602 U.S. at 834. That provision necessarily requires a determination that the predicate convictions arose from separate criminal incidents rather than a single episode—an inquiry materially similar to the "separate occasions" analysis that arises in the PFDCF context. For Delaware courts interpreting the statute have likewise treated the provision as requiring the sentencing court to determine whether prior convictions involved distinct episodes before imposing the enhanced penalty. *See generally Ross v. State*, 990 A.2d 424 (Del. 2010); *Campbell v. State*, 2022 WL 1278996 (Del. April 28, 2022).

[74] *See* DEL. CODE ANN. tit. 11, § 4214 (2006), (2007), (2025).

[75] *State v. Peters*, 283 A.3d 668, 691–94 (Del. Super. Ct. 2022), *aff'd*, 299 A.3d 1 (Del. 2023) (discussing the history of the Delaware Habitual Criminal Act's occasionality requirement and explaining: It "means only that there must be crime-conviction-sentence, crime-conviction-sentence sequencing, with no overlap, for each given felony that is included in the habitual criminal status calculation. And there need be no more than the passing of a moment between the fall of the gavel recessing a prior's sentencing hearing and the person's commission of his next felony to insure there is no overlap."); *Johnson v. Butler*, 1995 WL 48368, at *1 (Del. Jan. 30, 1995) (stating that the requirement is "some period of time must have elapsed between sentencing on the earlier conviction and the commission of the offense resulting in the later felony conviction").

that those convictions were distinct in time and occurrence.[76] In structure and effect, that inquiry resembles the ACCA's "committed on occasions different from one another" requirement addressed in *Erlinger*.[77]

Other Delaware statutes may likewise implicate the "separate occasions" inquiry addressed in *Erlinger*.[78] The statutes discussed here do not delimitate that universe. Rather, they demonstrate how the issue arises across Delaware's sentencing schemes and how its resolution directly affects the penalties offenders face thereunder—such as these Bellwether Defendants. Against that backdrop, at oral argument, the Court pressed the State to clarify its position on what *Erlinger* requires under Delaware's sentencing statutes.[79] In response to the Court's questions, the State acknowledged that where a sentencing enhancement depends on

---

[76] *Peters*, 283 A.3d at 691–94; *State v. Hicks*, 2010 WL 3398470, at *4 (Del. Super. Ct. Aug. 17, 2010) (collecting cases) ("There is no set time frame between the preceding conviction and the arrest; *some* period of time is all that is required.") (emphasis in original), *aff'd*, 2011 WL 240236 (Del. Jan. 19, 2011).

[77] *Compare Hall v. State*, 473 A.2d 352, 356 (Del. 1984) *and Buckingham v. State*, 482 A.2d 327, 330–31 (1984) (Delaware's first articulation that there must be crime-conviction-sentence, crime-conviction-sentence sequencing, with no overlap, for each given felony that is included in a Delaware § 4214 habitual-criminal-status calculation) *with Erlinger*, 602 U.S. at 834 (explaining 18 U.S.C. § 924(e)(1)'s requirement that the government prove that three prior convictions were "committed on occasions different from one another," *i.e.* "those past offenses occurred on three or more different occasions"—"a fact-laden task").

[78] *See, e.g.*, DEL. CODE ANN. tit. 21, §§ 4177, 4177B(e)(4) (2025) (mandating that, under Delaware's felony driving under the influence statute, "prior or previous convictions or offenses used to determine eligibility for such enhanced penalties must be separate and distinct offenses; that is, each must be successive to the other with some period of time having elapsed between sentencing or adjudication for an earlier offense or conviction and the commission of the offense resulting in a subsequent conviction").

[79] Aug. 22, 2025 Hrg. Tr., 54–64 (D.I 42).

whether prior offenses or convictions occurred on separate occasions, that determination must be made by a jury.[80] The parties disagree, however, as to the scope of that requirement and whether it applies to the Bellwether Defendants.

One point must be made clear at the outset. Even accepting the Defendants' read of *Erlinger* in the most favorable light, the decision does not disturb the continued vitality of *Almendarez-Torres* as the answer to who determines the existence of prior convictions themselves.[81] Nor does it convert every recidivist enhancement into a jury question. At most, *Erlinger* speaks to determinations concerning the separateness or relational character of prior offenses and convictions

---

[80]  *Id.* at 56–59:

THE COURT: Does the jury have to find that the person has been at least twice previously convicted of a felony, now under *Erlinger*?

STATE's
COUNSEL:  That would be correct, yes.

THE COURT: Okay, all right. And that did not happen in at least one of these cases?

STATE's
COUNSEL:   It did not.

                   \*             \*            \*

STATE's
COUNSEL:   . . . ultimately, if the issue involves whether the offenses occurred on a separate occasion, to clarify, yes, that needs to be decided by a jury.

[81]  *See Erlinger*, 602 U.S. at 838 ("Still, no one in this case has asked us to revisit *Almendarez-Torres*. Nor is there need to do so today. In the years since that decision, this Court has expressly delimited its reach. It persists as a 'narrow exception' permitting judges to find only 'the fact of a prior conviction.'") (citations omitted). The Defendants agree with this much. Aug. 22, 2025 Hrg. Tr., 12–16.

-19-

therefor—what might fairly be described as "occasionality" findings.[82] For now, all other matters attendant to recidivist sentencing remain within the traditional province of the Court.[83]

It is undisputed that no jury in any of the instant cases was asked to determine whether the Defendants' prior convictions were "separate and distinct," obtained in separate proceedings, committed on separate occasions, or committed within a specified temporal window. Those determinations, where required, were made by the sentencing judge. Accordingly, if *Erlinger* truly applies retroactively, as Defendants say, and the enhancement provisions at issue require findings that exceed the "fact of a prior conviction,"[84] then a constitutional question would arise.

The remainder of this Opinion addresses whether *Erlinger* affords these Defendants any relief.

## III. THE PARTIES' CONTENTIONS

Defendants contend that their sentences violate the Fifth and Sixth Amendments because sentencing judges, rather than juries, made factual

---

[82] *See generally Erlinger*, 602 U.S. 821.

[83] *See, e.g., Ortiz v. State*, 2025 WL 2718502, at *2 (Del. Sept. 23, 2025) (where the statutory minimum for defendant's felon drug offense was enhanced because of a single prior, the Court explained: "Ortiz's [possession with intent to deliver] sentence is not illegal under *Erlinger*, because the Superior Court was permitted to find the fact of Ortiz's prior conviction under *Almendarez-Torres*.").

[84] *Alleyne*, 570 at 111 n.1; *Erlinger*, 602 U.S. at 836–38; *see generally Almendarez-Torres*, 523 U.S. 224.

determinations that increased their statutory sentencing exposure.[85]  In their view, this constitutional infirmity flows from the principles articulated in *Apprendi* and extended in *Alleyne*, which require that any fact that increases the statute-authorized range of punishment be found by a jury beyond a reasonable doubt.  Defendants maintain that *Erlinger* didn't announce a new rule of constitutional law, but instead reaffirmed these longstanding principles and clarified the now-limited scope of *Almendarez-Torres*.[86]  Alternatively, they argue that if *Erlinger* is deemed to announce a new rule, it is substantive—or at least a procedural mechanism necessary to enforce a substantive limitation on punishment—and therefore applies retroactively under federal and Delaware law.[87]

They further assert that Delaware precedent, particularly *Rauf v. State* and *Powell v. State*,[88] independently supports retroactive application,[89] and that relief is available under this Court's Rule 35 or, in the alternative, Rule 61.[90]

The State responds that Defendants' claims are procedurally barred and largely non-cognizable under Rules 35 and 61.[91]  Too, it says, *Erlinger* announced a

---

[85]  *See generally* Defs.' Op. Br. (D.I. 35).

[86]  *See generally id.*; Defs.' Reply Br. 4–8 (D.I. 38).

[87]  Defs.' Op. Br. 35–36, 21–24; Defs.' Reply Br. 4–8.

[88]  145 A.3d 430 (Del. 2016); 153 A.3d 69 (Del. 2016).

[89]  Defs.' Op. Br. 35–36, 24–32; Defs.' Reply Br. 8–9.

[90]  *See generally* Defs.' Op. Br.; Defs.' Reply Br. 2–4.  If failing on all that, they urge certification to the Delaware Supreme Court. Defs.' Op. Br. 40–42; Defs.' Reply Br. 12.

[91]  *See generally* State's Ans. Br. (D.I. 37).

new procedural rule that is non-retroactive under federal and/or Delaware caselaw.[92]

According to the State, *Erlinger* merely reallocates certain fact-finding authority from judge to jury and therefore falls squarely within the category of non-retroactive procedural rules under *Teague v. Lane*, particularly in light of *Edwards v. Vannoy*.[93] The State points out that neither *Apprendi* nor *Alleyne* has been applied retroactively,[94] and *Rauf* and *Powell*[95] have and should be confined to the capital-sentencing context where heightened reliability concerns abide.[96]

## IV. ANALYSIS OF DEFENDANTS' CLAIMS[97]

The Court begins by outlining the analytical framework for evaluating alleged *Erlinger* defects. The starting point must be identification of whether—in a given circumstance—there is *Erlinger* error at all. If not, the analysis can end.

---

[92] *See generally id.* at 15–53.

[93] *Id.* at 43–45 (citing *Teague v. Lane*, 489 U.S. 288 (1989); *Edwards v. Vannoy*, 593 U.S. 255 (2021)).

[94] *Id.*

[95] *Rauf v. State*, 145 A.3d 430 (Del. 2016); *Powell v. State*, 153 A.3d 69 (Del. 2016).

[96] State's Ans. Br. at 49–52. On the idea of certification, the State maintains that this Court has authority to resolve the retroactivity question and that certification is procedurally unavailable because final judgments have already been entered. *Id.* at 56–58.

[97] "A certification of questions under law under Supreme Court Rule 41 lies entirely within the discretion of the certifying court." *In re Petition of Marvel*, 2003 WL 1442466, at *1 (Del. Mar. 19, 2003); *see* Del. Sup. Ct. R. 41; *State v. Superior Ct. In & For New Castle Cnty.*, 51 Del. 178, 182–83 (1958). Having considered the parties' positions, the Court finds that certification of the discrete question of *Erlinger*'s retroactivity—with numerous related issues left on the table— would be inefficient and is generally an ill-fit under the Supreme Court's certification criteria. *See* Del. Sup. Ct. R. 41(b) (illustrating the reasons the Supreme Court might accept certification of questions of law).

If so, the Court must then determine the proper procedural vehicle for the defendant's claim. Criminal Rule 35(a)—not Rule 61 nor any other contrivance—exclusively governs any *Erlinger*-based relief sought by one already serving his or her sentence because the challenge is truly aimed only at the validity of the sentence imposed, not the underlying conviction. Accordingly, Rule 35(a), together with harmless-error review, generally resolve post-sentencing *Erlinger* claims. That said, should a defendant demonstrate circumstances sufficient to overcome Rule 35(a)'s procedural limitations or harmless-error review the Court notes that, contrary to the Bellwether Defendants' argument, the proper remedy for a successful *Erlinger* challenge would be resentencing rather than automatic removal of the challenged enhancement.

Applying that framework, the Court first addresses Messrs. Deputy and Gee's motions. Those fail at launch because neither presents a viable *Erlinger* claim. Both defendants admitted the facts establishing the relevant sentencing exposure through their guilty pleas. The Court next turns to the motions of Messrs. Turner and Wright. Their applications do not challenge "illegal sentences" that may be corrected at any time under Rule 35(a); instead, like others in their position, their true challenge is to the manner in which their sentences were imposed. As a result, their claims are subject to Rule 35(a)'s ninety-day filing deadline. And a claimed violation of a right that *Erlinger* recognized doesn't constitute the type of extraordinary circumstance

-23-

that would excuse late filing.

Now, even assuming an *Erlinger* challenge could clear those procedural obstacles, the claim might still fail because any assumed *Erlinger* error proved harmless.

Finally, the Court rejects Defendants' contention that, were the Court mistaken on each of the foregoing issues, the appropriate remedy would be to forever strike the challenged enhancements. Rather, the appropriate remedy for a successful *Erlinger* challenge is to conduct a procedurally proper resentencing hearing.

## A. MR. DEPUTY AND MR. GEE'S MOTIONS FAIL BECAUSE NEITHER THEIR SENTENCES NOR THE PROCEEDINGS THAT WROUGHT THEM PRESENT AN *ERLINGER* ISSUE.

As this Court has observed, when dealing with certain protestations of *Erlinger* error, it need not figure out which procedural tool is the correct one to employ nor unravel *Erlinger*'s retroactivity.[98] Sometimes, "*Erlinger*, by its own terms does not provide [one] with the relief he seeks."[99] Just so here.

Recall, in *Erlinger,* the United States Supreme Court stated that "[v]irtually any fact that increases the prescribed range of penalties to which a criminal

---

[98] *State v. Braxton*, 2025 WL 1101627, at *2 (Del. Super. Ct. Apr. 14, 2025), *aff'd*, 2025 WL 2803785, at *2 (Del. Oct. 1, 2025); *State v. Ortiz*, 2025 WL 1445841, at *2 (Del. Super. Ct. May 20, 2025), *aff'd*, 2025 WL 2718502, at *2 (Del. Sept. 23, 2025); *State v. Fairley*, 2026 WL 895668, at *1 (Del. Super. Ct. Apr. 1, 2026) ("While further litigation may well yield refinements in the Court's treatment of *Erlinger* claims, many are now ripe for resolution.").

[99] *Ortiz*, 2025 WL 1445841, at *2.

defendant is exposed must be resolved by a unanimous jury beyond a reasonable doubt" *or* "freely admitted in a guilty plea."[100] Mr. Deputy and Mr. Gee pleaded guilty to their offenses. When doing so, each admitted the facts underlying their convictions and the sentencing ranges applicable to the offenses to which they pleaded.[101] Their pleas therefore supplied all that was necessary to authorize the sentences imposed, including the statutory enhancements they now challenge.

To the extent Mr. Deputy and Mr. Gee label their sentences "illegal," such a claim could succeed only if their judgments of conviction did not authorize the punishment imposed.[102] But that contention fails here. The judgments of conviction did authorize the sentences imposed because the very statutes to which the defendants pleaded—11 *Del. C.* § 1447A(c) in Mr. Deputy's case, and 11 *Del. C.* § 1448(e) in Mr. Gee's—expressly provide for the enhanced penalties that were applied.[103] Stated differently, theirs are not situations in which the Court imposed a

---

[100] *Erlinger*, 602 U.S. at 834 (internal quotations and alterations omitted).

[101] Plea Agreement, *State v. Clay L. Deputy*, Crim. ID. No. 2110001695 (Del. Super. Ct. Jan. 9, 2023) (D.I. 11); Plea Agreement, *State v. Troy E. Gee*, Crim. ID. No. 1511001714 (Del. Super. Ct. Mar. 16, 2017) (D.I. 51).

[102] *See* Del. Super. Ct. Crim. R. 35(a) ("*Correction of sentence*. The court may correct an illegal sentence at any time . . ."); *Brittingham v. State*, 705 A.2d 577, 578 (Del. 1998) (holding that relief from an "illegal sentence" under Rule 35(a) is available only when the imposed sentence is not authorized by the underlying judgment of conviction); *State v. Earl*, 2024 WL 5237633, at *3 (Del. Super. Ct. Dec. 16, 2024), *appeal dismissed*, 339 A.3d 751 (Del. 2025), *as revised* (Mar. 12, 2025) ("Relief under Rule 35(a) is available when, *inter alia*, the sentence imposed: exceeds the statutorily-authorized limits; omits a term required to be imposed by statute; is uncertain as to its substance; or, is a sentence that the judgment of conviction did not authorize.").

[103] DEL. CODE ANN. tit. 11, § 1447A (2021) ("A person convicted [of PFDCF], and who has been

sentence foreign to the statute of conviction; in each case the defendants pleaded guilty to offenses and admitted to facts supporting and eligibility for the very penalties they now attack.[104]

In Mr. Deputy's case, the record reflects a highly negotiated deal between the State and him.[105] Mr. Deputy ultimately pleaded guilty to PFDCF, and during the plea proceedings the parties, the Court, and Mr. Deputy, himself, confirmed that he was admitting that the PFDCF charge carried the enhanced minimum mandatory sentence under § 1447A(c).[106] The plea paperwork also notated the enhanced

---

at least twice previously convicted of a felony in this State or elsewhere, shall receive a minimum sentence of 5 years at Level V"); DEL. CODE ANN. tit. 11, § 1448(e)(1)(b) (2015) (stating that the minimum for PFBPP becomes "[f]ive years at Level V, if the person does so within 10 years of the date of conviction for any violent felony or the date of termination of all periods of incarceration or confinement imposed pursuant to said conviction, whichever is the later date").

[104] And no challenge to either the validity of those pleas or any alleged deficiencies in indictment or proceedings can be brought here. *Brittingham*, 705 A.2d at 578 (quoting *Whitfield v. United States*, 401 F.2d 480, 483 (9th Cir. 1968)) ("A proceeding under Rule 35 presupposes a valid conviction."); *State v. Earl*, 2024 WL 5237633, at *2 (Del. Super. Ct. Dec. 16, 2024) ("A motion attacking a sentence under either Rules 35(a) or 35(b) presupposes a valid conviction."); *Johnson v. State*, 2025 WL 3513779, at *1 (Del. Dec. 5, 2025) ("Nor is Johnson's sentence illegal because the indictment did not allege his predicate offenses or indicate that the State would seek habitual-offender sentencing. By pleading guilty and agreeing that he was subject to habitual-offender sentencing, Johnson forfeited his right to assert that challenge to the indictment.").

[105] Plea Hr'g Tr. at 5–17, *State v. Clay L. Deputy*, Crim. ID. No. 2110001695 (Del. Super. Ct. Jan. 9, 2023) (D.I. 20) (Mr. Deputy's counsel outlining the negotiations).

[106] *Id.* at 5–6 (defense counsel outlining Mr. Deputy's felony record including a 1994 second-degree burglary conviction, a 1995 felony drug conviction, a 1997 cocaine trafficking conviction, a 2013 drug dealing conviction, and a 2020 drug dealing conviction for which he was still on probation and explaining "Mr. Deputy unfortunately has sufficient underlying felony convictions to be eligible for sentencing as an habitual offender"); *id.* at 11–12 (Mr. Deputy confirming that he heard and understood his counsel's representations); *id.* at 29:

> THE COURT:   For the possession of a firearm during the commission of a
>              felony, you face a minimum of 5 years and that's because of your

-26-

sentence Mr. Deputy agreed to.[107]

In Mr. Gee's case, he accepted his plea after he and his attorney "spent many hours on the agreement over the last few days" before the plea hearing.[108] During his plea proceedings Mr. Gee freely admitted all the facts necessary to determine that he was subject to a five-year minimum for the PFBPP count.[109] Here too,

---

felony convictions; do you understand that?

MR. DEPUTY:   Yes.

*See* Sentencing Hr'g Tr. at 9–12, *State v. Clay L. Deputy*, Crim. ID. No. 2110001695 (Del. Super. Ct. Jan. 27, 2023) (D.I. 19) (State's and defense counsel outlining Mr. Deputy's record of prior felonies and that "because of [his] prior felony history, [the PFDCF sentence] is enhanced from what normally would be a three-year minimum mandatory sentence to a five-year minimum mandatory sentence"); *id.* at 21–23 (Mr. Deputy acknowledging his cumulative minimum term of seven years).

[107] Plea Agreement and TIS Guilty Plea Form, *State v. Clay L. Deputy*, Crim. ID. No. 2110001695 (Del. Super. Ct. Jan. 9, 2023) (D.I. 11).

[108] Plea Hr'g Tr. at 7, *State v. Troy E. Gee*, Crim. ID. No. 1511001714 (Del. Super. Ct. Mar. 16, 2017) (D.I. 89).

[109] *Id.* at 6 (prosecutor outlining the prior violent felony convictions Mr. Gee agreed and admitted to); *id.* (Mr. Gee confirming that he heard and understood his counsel's representations); *id.* at 13–16:

THE COURT:   The next is Possession of a Firearm by a Person Prohibited, Count XX of the Indictment.

It says that you on or about the 2nd day of November, in this County and State did knowingly own, possess, or control a firearm, which is a deadly weapon as defined by Delaware law, after having been convicted of Possession of a Firearm During the Commission of a Felony, which is a violent felony. And that you entered that plea before this Court on March 6th of 2009.

Do you understand that, sir?

MR. GEE:   Yes, sir.

                    *              *              *

THE COURT:   Mr. Gee, are you pleading to these five crimes because you committed the acts that I just read to you?

-27-

Mr. Gee's plea paperwork noted the enhanced sentence and contained a written admission to his prior predicate convictions.[110]

Defendants attempt to suggest that their pleas were neither knowing nor intelligent because they were not then aware of a purported *Erlinger* right they now claim.[111] But, they provide no support for the proposition that a plea is deficient if it does not account for later developments in the law. There is none.[112]

And one who has admitted the relevant sentencing exposure as part of a guilty plea cannot later complain that a jury wasn't empaneled to determine what his plea already established.[113] It is for this reason our courts have consistently held that

---

MR. GEE: Yes, sir.

\* \* \*

THE COURT: To the charge of Possession of a Firearm by a Person Prohibited, because you had a prior violent felony do you understand that you face a minimum of five years . . . imprisonment?

MR. GEE: Yes, sir.

[110] Plea Agreement and TIS Guilty Plea Form, at 1, *State v. Troy E. Gee*, Crim. ID. No. 1511001714 (Del. Super. Ct. Mar. 16, 2017) (D.I. 51) ("Defendant agrees and admits that he was convicted of the following felony offense on 3/6/2009: PDCF, PDWBPP, Reckless Endangering 1st Degree.").

[111] Aug. 22, 2025 Hrg. Tr., 5–6.

[112] *See Brown v. State,* 108 A.3d 1201, 1202 (Del. 2015) ("[A] court may accept a guilty, with its accompanying waiver of various constitutional rights (including the right to a fair trial), even when the defendant does not have full knowledge of the relevant circumstances.") (citing *United States v. Ruiz*, 536 U.S. 622, 623–29 (2002) (holding that the "Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor.")).

[113] *See Blakely v. Washington*, 542 U.S. 296, 312 (2004) ("[T]he Sixth Amendment was not written for the benefit of those who choose to forgo its protection.").

a guilty plea with an admission of sentence enhancers and eligibility precludes any claim under *Erlinger* that one's rights were violated by enhanced sentencing under our recidivist statutes.[114] His is in "a category of cases to which *Erlinger* does not apply."[115]

So, no matter how they are framed, the claims advanced by Messrs. Deputy and Gee fail from launch because neither presents a cognizable *Erlinger* issue. They each pleaded guilty and, when doing so, admitted the facts and sentencing exposure necessary to support the enhanced penalties they now challenge. Those admissions foreclose any argument that additional jury factfinding was constitutionally required.[116]

What is more, even if Mr. Deputy and Mr. Gee could articulate a cognizable

---

[114] *Morris v. State*, 2025 WL 2541982, at *1–2 (Del. Sept. 3, 2025) (sentenced as habitual criminal under 11 *Del. C.* § 4214); *Carney v. State*, 2025 WL 2779253, at *1–2 (Del. Sept. 29, 2025) (enhanced sentences for PFBPP under 11 *Del. C.* § 1448(e)(1)); *Braxton v. State*, 2025 WL 2803785, at *1–2 (Del. Oct. 1, 2025) (habitual criminal sentence); *Johnson v. State*, 2025 WL 3513779, at *1–2 (Del. Dec. 5, 2025) (same); *Rosa v. State*, 2025 WL 3200704, at *1 (Del. Nov. 14, 2025) (enhanced sentences for PFBPP and PFDCF under 11 *Del. C.* §§ 1448(e)(1) and 1447A(c)); *State v. Fitzgiles*, 2025 WL 2172296, at *2 (Del. Super. Ct. Jan. 28, 2026) (habitual criminal sentence); *State v. Davis*, 2026 WL 226576, at *3 (Del. Super. Ct. Jan. 28, 2026) (same); *Fairley*, 2026 WL 895668, at *2 (same).

[115] *State v. Grayson*, 2026 WL 280561, at *2 (Del. Super. Ct. Feb 3, 2026).

[116] *Brady v. United States*, 397 U.S. 742, 748 (1970) ("But the plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial—a waiver of his right to trial before a jury or a judge."); *Class v. United States*, 583 U.S. 174, 182 (2018) (citing *United States v. Broce*, 488 U.S. 563, 573–74 (1989)) ("[A] valid guilty plea relinquishes any claim that would contradict the 'admissions necessarily made upon entry of a voluntary plea of guilty.'"); *Broce*, 488 U.S. at 569 ("A plea of guilty and the ensuing conviction comprehend *all of the factual and legal elements* necessary to sustain a binding, final judgment of guilt and a lawful sentence.") (emphasis added); *Ruiz*, 536 U.S. at 628–29 ("[A] valid guilty plea 'forgoes not only a fair trial, but also other accompanying constitutional guarantees.'").

*Erlinger* claim—which they cannot—their motions would still fail as untimely. Rule 35(a) requires that any claim that a sentence was imposed in an illegal manner be filed within ninety days of sentencing.[117] Both defendants filed their motions long after that deadline expired. And as now explained, the *Erlinger* decision does not constitute an extraordinary circumstance that would excuse Rule 35(a)'s time bar.[118]

### B. THE COURT CAN ONLY CONSIDER DEFENDANTS' CLAIMS UNDER THIS COURT'S CRIMINAL RULE 35(a).

At bottom, every movant claiming *Erlinger* error is seeking revision of his or her sentence—more specifically, reduction of sentence via excision of some statutory recidivist enhancement due to a claimed procedural irregularity. "When addressing any species of sentencing reduction or modification request, the Court first identifies the specific procedural mechanism the inmate attempts to invoke; it must then determine whether that mechanism is available under the circumstances."[119] Defendants contend that the relief they seek is available under either Superior Court Criminal Rule 35 or Rule 61. But Delaware law has long distinguished between (1) challenges to convictions, which fall within Rule 61's

---

[117] Del. Super. Ct. Crim. R. 35(a)-(b); *Frink v. State*, 2008 WL 4307199, at *1 (Del. Sept. 22, 2008).

[118] *See Henderson v. State*, 2002 WL 1751673, at *1 (Del. July 24, 2002) ("A motion for correction of a sentence imposed in an illegal manner must be filed with 90 days of sentencing, absent extraordinary circumstances.").

[119] *State v. Ruffin*, 2023 WL 8567293, at *2 (Del. Super. Ct. Dec. 11, 2023) (cleaned up).

allowance of a motion for postconviction relief, and (2) challenges to sentences, which are governed by Rule 35's allowance for a motion to correct a sentence.[120]

**1. Sentencing challenges such as these are not cognizable under Rule 61.**

Defendants contend that their *Erlinger*-enhanced-sentencing arguments can be analyzed under both Rule 61 and Rule 35. Not so. Each rule addresses different defects in the criminal litigation process. Rule 61 applies only when the convicted is "seeking to set aside the judgment of conviction" and only on a "ground that is a sufficient factual and legal basis for a collateral attack upon a criminal conviction[.]"[121] If there isn't an issue with the conviction, then Rule 61 doesn't apply.[122] That's the rule here. Defendants don't identify any true defect in their convictions, so they can't invoke Rule 61 for relief.[123]

---

[120] *Compare* Del. Super. Ct. Crim. R. 61, *with* Del. Super. Ct. Crim. R. 35(a).

[121] Del. Super. Ct. Crim. R. 61(a)(1).

[122] *See Gilmore v. State*, 2016 WL 936990, at *1 (Del. March 10, 2016) ("First, we note that Gilmore's arguments relate solely to the legality of his sentences and do not challenge the legality of his convictions. His sentencing claims are not cognizable under Rule 61."). The only exception to that rule is a capital sentence—which, by its express terms, may be addressed under Rule 61—but all those that existed in Delaware were struck down nearly a decade ago. *See Rauf*, 145 A.3d at 432; *see also Powell*, 153 A.3d 69. And more to the point, not one of the sentences here is "a sentence of death." Del. Super. Ct. Crim. R. 61(a)(1).

[123] *See generally* Defs.' Op. Br.; *see Wilson v. State*, 2006 WL 1291369, at *2 (Del. May 9, 2006) ("Clearly the rule provides a procedure for a criminal defendant to set aside a *conviction* or challenge a *capital sentence.* Here, Wilson did neither. Wilson assumed his conviction was proper and only challenged the imposition of a three year and six-month prison sentence. Therefore, Wilson's 'illegal sentence' claim is not a cognizable Rule 61 claim.") (emphasis in original); *see also State v. Lewis*, 797 A.2d 1198, 1200–01 (Del. 2002) (explaining the difference between these post-sentencing mechanisms); *State v. Ridley*, 2014 WL 4705445, at *1 (Del. Super. Ct. Sept. 19, 2014) ("A claim of illegal sentence cannot be challenged under Rule 61 and instead must be challenged under Rule 35(a).").

**2. Rule 35(a) is the only available route for Defendants.**

The core *Erlinger* argument Defendants attempt to advance is that the prior convictions used to enhance their sentences were required to be found by a jury, and that no such jury factfinding occurred.[124] They argue no other deficiency than that of their enhanced sentences. No doubt, then, only Rule 35(a) review is appropriate. And within that framework, their claims are rightly understood to be that their sentences were imposed in an illegal manner or are illegally imposed sentences. That is key.[125]

An "illegal sentence" under Rule 35(a) is plainly defined.[126] "A sentence is illegal if it exceeds statutory limits, violates the Double Jeopardy Clause, is ambiguous with respect to the time and manner in which it is to be served, is internally contradictory, omits a term required to be imposed by statute, is uncertain as to its substance, or is a sentence that the judgment of conviction did not authorize."[127] A Rule 35(a) motion that does not challenge a sentence on one of those bases is considered a motion for correction of sentence imposed in

---

[124] *See generally* Defs.' Op. Br.; Defs.' Reply Br. at 2–4.

[125] *Wilson*, 2006 WL 1291369, at *3 ("[T]he distinction between an illegal sentence as opposed to a sentence imposed in an illegal manner (or an illegally imposed sentence) is critical."); *State v. Serfuddin El*, 2009 WL 74128, at *1 (Del. Super. Ct. Jan. 7, 2009) (same).

[126] *Brittingham*, 705 A.2d at 578.

[127] *McCray v. State*, 2025 WL 1779553, at *1 (Del. June 26, 2025) (citing *Brittingham*, 705 A.2d at 578).

an illegal manner.[128] And in the norm, a motion seeking correction of a sentence imposed in an illegal manner will not be considered if filed more than ninety days after imposition of the sentence.[129]

An exception to the ninety-day rule provides that a defendant may still challenge a sentence imposed in an illegal manner in "extraordinary circumstances."[130] The extraordinary-circumstances exception to that time bar is applied sparingly and requires a showing of highly unusual facts, entirely beyond the defendant's control, that specifically justify the delay and prevented timely filing.[131] And "a heavy burden is placed on the defendant to prove extraordinary circumstances when a Rule 35 motion is filed outside of ninety days of the imposition of a sentence."[132]

---

[128] *State v. Kirueya*, 2025 WL 252911, at *1 (Del. Super. Ct. Jan. 21, 2025) (citing *McLeaf v. State,* 2007 WL 2359554, at *1 (Del. Aug. 20, 2007).

[129] *Bliss v. State*, 2017 WL 1282091, at *1 (Del. Apr. 5, 2017); Del. Super. Ct. Crim. R. 35(a)–(b).

[130] This is a simplification of the rule. Rule 35(a) provides an exception to the 90-day rule when extraordinary circumstances exist by reference to that exception as articulated in Rule 35(b). Del. Super. Ct. Crim. R. 35(a)–(b).

[131] "Extraordinary circumstances" are generally defined as "[a] highly unusual set of facts that are not commonly associated with a particular thing or event." *State v. Tollis*, 126 A.3d 1117, 1121 (Del. Super. Ct. 2016) (quoting *State v. Diaz*, 2015 WL 1741768, at *2 (Del. April 15, 2015)). This Court and the Delaware Supreme Court have recognized that extraordinary circumstances are those that "specifically justify the delay"; are "entirely beyond a petitioner's control"; and "have prevented the applicant from seeking the remedy on a timely basis." *Lewis*, 797 A.2d at 1203–05 (Steele, J., dissenting) (emphasis omitted); *State v. Remedio*, 108 A.3d 326, 332 (Del. Super. Ct. 2014).

[132] *Diaz*, 2015 WL 1741768, at *2; *Remedio*, 108 A.3d at 332; *Tollis*, 126 A.3d at 1121.

Defendants' arguments ultimately resolve upon the answering of a single question: Does *Erlinger* apply retroactively to their sentences?  Each of Defendants' theories turns on retroactivity principles derived from the United States Supreme Court's decision in *Teague v. Lane*,[133] which Delaware courts have adopted as the analytical framework for determining whether new constitutional rules apply to cases that were final before the rule was announced.[134]  *Teague* addresses whether— and under what circumstances—a newly announced constitutional rule may be applied retroactively to defendants sentenced under prior law.[135]  Although *Teague* supplies the governing framework, the United States Supreme Court has also made clear that states remain free to afford broader retroactive relief as a matter of state law.[136]

Against that backdrop, Defendants first contend that their sentences were illegal or imposed in an illegal manner because *Erlinger* didn't announce a new rule of constitutional law at all.[137]  Instead, they argue, *Erlinger* merely recognized that Delaware and other jurisdictions had long imposed sentences in a manner

---

[133] *Teague v. Lane*, 489 U.S. 288, 306 (1989); *see generally* Defs.' Op. Br.; Defs.' Reply Br.

[134] *Flamer v. State*, 585 A.2d 736, 749 (Del. 1990) (adopting *Teague*); *see also Powell*, 153 A.3d 69–74.

[135] *See generally Teague*, 489 U.S. at 306; *Flamer*, 585 A.2d at 749.

[136] *Danforth v. Minnesota*, 552 U.S. 264, 282 (2008); *Powell*, 153 A.3d at 72–73.

[137] This is the dominant theme through much of Defendants' briefing. *See generally* Defs.' Op. Br.; Defs.' Reply Br.

inconsistent with the Constitution by permitting judicial factfinding where jury determinations were required.[138]

In the alternative, they say, even if *Erlinger* announced a new rule, that rule must apply retroactively under *Teague* and Delaware's broader retroactivity regime.[139] In turn, they say, were theirs to be considered attacks on sentences imposed in an illegal manner—meaning their applications are subject to Rule 35(a)'s time bar—*Erlinger*'s retroactivity constitutes an extraordinary circumstance sufficient to overcome Rule 35's ninety-day deadline.[140]

At bottom, Defendants arguments converge on the same threshold inquiry: whether *Erlinger* applies to cases on collateral review—a question answered under *Teague* and Delaware's retroactivity principles. As framed then, if *Erlinger* doesn't warrant retroactive application, Defendants cannot demonstrate extraordinary circumstances excusing their untimely motions.

### 3. Application of *Teague*'s Retroactivity Analysis

With minor variations, both the United States Supreme Court and the Delaware Supreme Court employ the same framework—derived from *Teague*—to determine whether a constitutional rule is "new" and, if so, whether it applies

---

[138] Defs.' Op. Br. at 33–34.

[139] Defs.' Op. Br. at 35–39; Defs.' Reply Br. at 4–12.

[140] *See generally* Defs.' Reply Br. at 2–3; *see* Del. Super. Ct. Crim. R. 35(b).

retroactively.[141]  Generally,

> a court should apply *Teague* by proceeding in three steps. First,
> the court must ascertain the date on which the defendant's
> conviction and sentence became final for *Teague* purposes.
> Second, the court must '[s]urve[y] the legal landscape as it then
> existed,' and 'determine whether a state court considering [the
> defendant's] claim at the time his conviction became final would
> have felt compelled by existing precedent to conclude that the
> rule [he] seeks was required by the Constitution[.]' Finally, even
> if the court determines that the defendant seeks the benefit of a
> new rule, the court must decide whether that rule falls within one
> of the two narrow exceptions to the nonretroactivity principle.[142]

The second and third steps of the *Teague* analysis can be somewhat tricky.

They require a court not only to distinguish between the application of settled

precedent and the announcement of a genuinely new constitutional rule, but also to

determine whether any such new rule qualifies for retroactive application on

collateral review.[143]  And retroactivity only applies if it is (1) substantive—meaning

it places certain conduct or categories of punishment beyond the State's power to

impose—or if it constitutes (2) a "watershed" rule of criminal procedure implicating

---

[141] *Powell*, 153 A.3d at 72–73.  And there is no reason to believe it shouldn't be engaged in this circumstance. *See Erlinger*, 602 U.S. at 859 (Kavanaugh, J., dissenting) ("For any case that is already final, the *Teague* rule will presumably bar the defendant from raising today's new rule in collateral proceedings.").

[142] *Caspari v. Bohlen*, 510 U.S. 383, 390 (1994) (quoting *Graham v. Collins*, 506 U.S. 461, 468 (1993); *Saffle v. Parks*, 494 U.S. 484, 488 (1990)). Here, there is no dispute that each defendant's conviction and sentence became final before the United States Supreme Court decided *Erlinger*. The first step of the *Teague* analysis is therefore satisfied.

[143] *See Caspari*, 510 U.S. at 390 (1994); *Schriro v. Summerlin*, 542 U.S. 348, 350–53 (2004); *Powell*, 153 A.3d at 74–75.

the fundamental fairness and accuracy of the criminal proceeding.[144] The latter exception is exceedingly strict and has been applied rarely, if at all.[145] Accordingly, most new procedural rules don't apply retroactively, and one bears a heavy burden in demonstrating that a claimed new constitutional rule satisfies *Teague*'s stringent retroactivity requirements.[146]

Even so, the *Teague* framework doesn't delimit a state court's authority when reviewing its own criminal judgments on collateral review.[147] In fact, "the postconviction retroactivity remedy that a state court provides for 'violations of the Federal Constitution is primarily a question of state law.'"[148] As the United States Supreme Court has made clear, *Teague*'s nonretroactivity doctrine was fashioned as a rule of federal restraint and does not limit the power of state courts to afford greater relief as a matter of state law.[149] Thusly, while a Delaware court may look to *Teague*

---

[144] *Teague v. Lane*, 489 U.S. at 311–12; *Powell*, 153 A.3d at 72.

[145] *Vannoy*, 593 U.S. at 267 ("The Court has never identified any other pre-*Teague* or post-*Teague* rule as watershed. None. Moreover, the Court has flatly proclaimed on multiple occasions that the watershed exception is unlikely to cover any more new rules. Even 32 years ago in *Teague* itself, the Court stated that it was 'unlikely' that additional watershed rules would 'emerge.'"); *Powell*, 153 A.3d at 74.

[146] *Vannoy*, 593 U.S. at 267; *but see Powell*, 153 A.3d at 74.

[147] *See Danforth*, 552 U.S. at 280–82 ("[T]he *Teague* decision limits the kinds of constitutional violations that will entitle an individual to relief on federal habeas, but does not in any way limit the authority of a state court, when reviewing its own state criminal convictions, to provide a remedy for a violation that is deemed "nonretroactive" under *Teague*.").

[148] *Powell*, 153 A.3d at 72–73.

[149] *See Danforth*, 552 U.S. at 280–81 ("It is thus abundantly clear that the *Teague* rule of nonretroactivity was fashioned to achieve the goals of federal habeas while minimizing federal intrusion into state criminal proceedings. It was intended to limit the authority of federal courts to

for guidance in evaluating retroactivity,[150] the ultimate retroactivity determination in a Delaware state postconviction proceeding rests upon Delaware law and Delaware courts' independent authority to provide broader protections.[151]

### a. *Erlinger announced a "new rule" of constitutional law.*

The Court first must decide whether *Erlinger* announced a "new rule."[152] Defendants argue that *Erlinger* is not a new rule, but rather a straightforward application of long-standing constitutional principles requiring that facts increasing punishment be found by a jury beyond a reasonable doubt.[153]   According to Defendants, *Erlinger* merely clarified that sentencing schemes permitting judicial factfinding in this context were unconstitutional all along.  If that were correct, they argue, *Erlinger* would apply to cases that were already final, and Defendants' sentences would be "illegal" when imposed because *Erlinger* was the law when they were sentenced.[154]  Defendants have it wrong here.

Even if *Erlinger* didn't announce a "new rule" under *Teague* and therefore, they had a right to a jury determination supporting their enhanced sentences, that

---

overturn state convictions—not to limit a state court's authority to grant relief for violations of new rules of constitutional law when reviewing its own State's convictions.").

[150] *Flamer*, 585 A.2d at 749 (adopting the *Teague* standard and its "general rule of non-retroactivity").

[151] *Powell*, 153 A.3d at 72–73.

[152] *Teague*, 489 U.S. at 301; *Caspari*, 510 U.S. at 390; *Bailey*, 588 A.2d 1121, 1128 (Del. 1991).

[153] Defs.' Op. Br. at 33–34.

[154] *See* Del. Super. Ct. Crim. R. 35(a) ("The court may correct an illegal sentence at any time[.]").

conclusion would not transform their sentences into "illegal sentences" cognizable under Rule 35(a)'s at-any-time provision. The category of "illegal sentences" is narrow and does not encompass every alleged defect in the sentencing process.[155] Any Rule 35(a) motion not captured within that very small defined class is a motion for correction of sentence imposed in an illegal manner.[156] That's what we have here. At most, Defendants allege a sentence imposed in an illegal manner, a claim precisely subject to Rule 35's ninety-day jurisdictional bar.[157] Even with that understanding, the Court must still determine whether the rule is "new" to complete

---

[155] *Marvel v. State*, 2008 WL 1813171, at *1 (Del. April 23, 2008) ("It is well-established that the grounds for a motion seeking correction of an illegal sentence under Superior Court Criminal Rule 35(a) must be limited to alleged errors within the sentence itself, i.e., the sentence exceeds the statutory limits, violates double jeopardy, is ambiguous or inconsistent, or omits a required term.").

[156] *Kirueya*, 2025 WL 252911, at *1 ("If a Rule 35(a) motion does not attack a sentence based on one of the [*Brittingham*-defined] issues, the motion is considered a motion for correction of sentence imposed in an illegal manner."). Under a motion for this Court's Criminal Rule 35, the Court looks to the substance of the relief requested, not the label attached by the movant. *Parham v. State*, 2015 WL 7272171, at *1 (Del. Nov. 16, 2015) (affirming a decision holding that, although labeled as a motion to correct an illegal sentence, the motion was properly analyzed as seeking relief from a sentence imposed in an illegal manner); *McCleaf v. State*, 2007 WL 2359554, at *1 (Del. Aug. 20, 2007) (same); *St. Louis v. State*, 2007 WL 2810991, at *1 (Del. Sept. 28, 2007) (same); *see also State v. Roten*, 2012 WL 1995532, at *1 (Del. Super. Ct. May 29, 2012) ("Although defendant labels the sentence to be an illegal one, it is the Court's role to categorize the argument.") (internal citations omitted).

[157] *See Walley v. State*, 2007 WL 135615, at *1 (Del. Jan. 11, 2007) (holding that defendant's Rule 35(a) claim where he argued that the "Superior Court failed to hold a separate hearing to determine his habitual offender status" was "actually a claim that his sentence was imposed in an illegal manner under Rule 35(b)[;]" thusly, "[s]uch a claim is required to be asserted within 90 days of sentencing."); *McLeaf*, 2007 WL 2359554, at *1 (finding that a Rule 35(a) motion based upon a defective habitual offender hearing was a motion for correction of a sentence imposed in an illegal manner); *Guinn v. State*, 2015 WL 3613555, at *1 (Del. June 9, 2015) (finding, again, a motion for correction of sentence claiming error at enhanced sentencing hearing was actually a motion seeking relief from a sentence imposed in an illegal manner).

the *Teague* analysis that might aid in determining if the sentences were imposed in an illegal manner.

A rule is considered "new" if it "was not dictated by precedent existing at the time the defendant's conviction became final"[158]—that is, if reasonable jurists could have disagreed about the result.[159] The United States Supreme Court has made clear that "[a] holding constitutes a 'new rule' within the meaning of *Teague* if it 'breaks new ground,' 'imposes a new obligation on the States or the Federal Government,' or was not 'dictated by precedent existing at the time the defendant's conviction became final.'"[160]

Of course, as the Delaware Supreme Court has recognized, there may be a "subtle difficulty" in distinguishing between a decision that truly creates a new rule and one that merely "appl[ies] a well-established constitutional principle to govern a case which is closely analogous to those . . . previously considered in the case law."[161] And Delaware has expressly "decline[d] to adopt a formal static test for

---

[158] *Teague*, 489 U.S. at 301 (emphasis omitted).

[159] *Graham*, 506 U.S. at 467 (quoting *Butler v. McKellar*, 494 U.S. 407, 414 (1990); *Saffle*, 494 U.S. at 488)) ("This principle adheres even if those good-faith interpretations 'are shown to be contrary to later decisions.' Thus, unless reasonable jurists hearing petitioner's claim at the time his conviction became final 'would have felt compelled by existing precedent' to rule in his favor, we are barred from doing so now.").

[160] *Id.* (quoting *Teague*, 489 U.S. at 301).

[161] *Bailey*, 588 A.2d at 1128 (quoting *Mackey v. United States*, 401 U.S. 667, 695 (1971)) (discussing Justice Harlan's "admonition" on retroactivity and discussing the expansive view of new rule doctrine) (cleaned up). Rather than adopting a rigid view as to whether a "new rule" has been created, courts have generally taken a more jurisprudential approach, asking whether the

determining the meaning of a 'new rule'" to distinguish between genuinely new

constitutional rules and decisions that merely clarify or apply settled law.[162]

There is no such sorting difficulty here. Before *Erlinger*, recidivism and prior

convictions just weren't considered to be matters required to be presented to a

jury.[163] And the United States Supreme Court had only ever abated judicial decision

making related to present-offense facts, including whether a crime was committed

with racial bias,[164] whether a murder was committed with aggravating factors such

as pecuniary gain,[165] whether a kidnapping involved "deliberate cruelty",[166] whether

---

outcome of the later decision was "susceptible to debate among reasonable minds," including whether other courts relied on the same purportedly controlling precedent to reach a different result. *Id.* (quoting *Butler*, 494 U.S. at 415). Disagreement among courts or jurists is therefore probative of whether a decision announced a new rule. *See generally id.* at 1128–29.

[162] *Id.* at 1128; *Powell*, 153 A.3d at 72 (quoting *Danforth*, 552 U.S. at 280) ("[W]e noted that the federal *Teague* 'new rule' doctrine was evolving and that State courts may grant postconviction 'relief to a broader class of individuals than is required by *Teague*.' Therefore, we declined to adopt a formal static test for determining the meaning of a 'new rule' for the purposes of deciding a Delaware postconviction proceeding.").

[163] *United States v. Fisher*, 229 F. App'x 63, 66 (3d Cir. 2007) ("While the reasoning in *Apprendi* may arguably apply to recidivism as well, neither the Supreme Court nor this Court has so held. Thus we have no discretion but to hold that recidivism need not be proven to a jury beyond a reasonable doubt when considered as a sentencing factor.") (internal citations omitted); *State v. Laboy*, 117 A.3d 562, 567 (Del. 2015) ("In *Apprendi v. New Jersey,* the U.S. Supreme Court held that mandatory maximum penalties are elements of the crime which the State must prove beyond a reasonable doubt. *Alleyne* merely extended the Court's rationale in *Apprendi* to mandatory minimum penalties. But the holding in *Apprendi* specifically exempted a 'prior conviction' as an element that 'must be submitted to a jury and proved beyond a reasonable doubt.'") (internal citations omitted).

[164] *Apprendi*, 530 U.S. 466.

[165] *Ring v. Arizona*, 536 U.S. 584 (2002).

[166] *Blakely*, 542 U.S. 296.

a defendant possessed a certain quantity of drugs,[167] whether the record supported aggravating facts such as particular vulnerability of a victim and the defendant's violent conduct,[168] or whether a firearm was "brandished" during a robbery.[169]  In each instance, the constitutional rule regulated only judicial factfinding regarding the specific commission or circumstances of the charged offense itself.[170]  And a broad understanding of *Almendarez-Torres*'s reach endured simultaneously.[171]

*Erlinger* changed that.  For the first time, the Supreme Court required that a jury—rather than a judge—determine a fact relating not to the circumstances of the present offense but to the character and temporal relationship of prior convictions used to enhance a sentence for the present offense; specifically, whether those prior offenses occurred on "different occasions."  And by extending the jury-trial and reasonable-doubt requirements to the "different occasions" inquiry, the Supreme Court for the first time applied existing constitutional principles to a category of sentencing facts that had long been treated as the province of the sentencing judge alone.[172]  Simply put, *Erlinger* announced a new rule of constitutional law.

---

[167]  *United States v. Booker*, 543 U.S. 220 (2005).

[168]  *Cunningham v. California*, 549 U.S. 270 (2007).

[169]  *Alleyne*, 570 U.S. 99.

[170]  *See People v. Rodney*, 224 N.Y.S.3d 332, 335 (N.Y. Sup. Ct. 2024) (outlining pre-*Erlinger* state of the law).

[171]  *See Apprendi*, 530 U.S. at 487 (upholding *Almendarez-Torres*); *Ring*, 536 U.S. at 597 n.4 (declining to reach *Almendarez-Torres*); *Alleyne*, 570 U.S. at 111 n.1 (same).

[172]  *Compare Erlinger*, 602 U.S. 821 *with Key v. State*, 463 A.2d 633, 639 (Del. 1983) *and State*

According to Defendants, *Erlinger* cannot constitute a new rule because it merely enforces the long-established requirement that facts increasing punishment be found beyond a reasonable doubt, a principle they trace to *In re Winship* and *Ivan V. v. City of New York*.[173] Thus, they argue, *Erlinger* merely materialized a truth of constitutional law—a truth overlooked by jurisdictions like Delaware and our federal courts—that certain facts related to Defendants' past convictions must be brought before a jury and proven beyond a reasonable doubt. Not necessarily.

The fact that a decision draws upon or extends an established principle doesn't mean that the resulting rule was dictated by prior precedent.[174] *Winship* established that facts constituting the elements of an offense must be proven beyond a reasonable doubt, and *Ivan V.* held that *Winship* applied retroactively.[175] Neither decision addressed sentencing enhancements, recidivism determinations, or the allocation of factfinding authority at sentencing.[176]

For decades after *Winship*, courts uniformly treated determinations

---

*v. Archie*, 2002 WL 1922466, at *6 (Del. Super. Ct. Aug. 12, 2002); *see also Rodney*, 224 N.Y.S.3d at 335–36 ("[*Erlinger*] for the first time mandated jury trials for a factual determination of circumstances pertaining not to the present crime, but to a past offense.").

[173] Defs.' Op. Br. 33–34; *see also Ivan V. v. City of New York*, 407 U.S. 203 (1972); *In re Winship*, 397 U.S. 358 (1970).

[174] *See Graham*, 506 U.S. at 467; *Saffle*, 494 U.S. at 488; *Powell*, 153 A.3d at 72; *Bailey*, 588 A.2d at 1128–29; *see, e.g.*, *United States v. Reyes*, 755 F.3d 210, 212 (3d Cir. 2014) ("*Alleyne* did indeed announce a new rule.").

[175] *See generally Winship*, 397 U.S. 358; *Ivan V.*, 407 U.S. 203.

[176] *See generally Winship*, 397 U.S. 358; *Ivan V.*, 407 U.S. 203.

concerning the nature and relationship of prior convictions, including whether offenses occurred on separate occasions, as matters appropriate for judicial resolution at sentencing.[177] Neither *Winship* nor later decisions such as *Apprendi* and *Alleyne* were understood to change that thinking, and sentencing practices across jurisdictions, including in Delaware, reflected that understanding.[178] The mere fact that *Erlinger* relies on principles articulated in those earlier cases doesn't mean that its holding was contained within them[179]—even if alluded to.[180]

---

[177] *Key*, 463 A.2d at 639 ("It is now axiomatic that habitual criminality is a status, not a separate criminal offense. . . . [There is no] right to trial by an impartial jury[] as applicable to the determination of habitual offender status."); *see generally McMillan v. Pennsylvania*, 477 U.S. 79, 89–91 (1986) (permitting a statutory scheme where a trial court could find, by a preponderance of the evidence, that a person "visibly possessed a firearm" during an offense); *Almendarez-Torres*, 523 U.S. 224; *Erlinger*, 602 U.S. 821; *Archie*, 2002 WL 1922466, at *6.

[178] *See, e.g.*, *United States v. Francisco*, 165 F. App'x 144, 148 (3d Cir. 2006) ("We hold that the District Court did not err in relying on Francisco's record of prior convictions for aggravated felonies at sentencing. Under *Almendarez-Torres,* which remains binding law until the Supreme Court tells us otherwise, such facts need not be admitted by the defendant nor established by a jury beyond a reasonable doubt."); *Archie*, 2002 WL 1922466, at *6 (citing *State v. Payne*, 2001 WL 755347, at *1 (Del. Super. Ct. June 29, 2001)) (noting in a case where a defendant sought to use *Apprendi* to overturn *Almendarez-Torres* but his defense counsel refused, that the Court "has previously determined that *Apprendi* is inapplicable to a proceeding under Delaware's habitual criminal statute").

[179] Our Supreme Court has construed "new rule" liberally and recognized that "a new decision can announce a new rule even if the author of the opinion states that a prior decision 'controlled' the outcome." *Bailey*, 588 A.2d at 1128 (Del. 1991) (citing *Butler*, 494 U.S. at 414–15).

[180] *See Apprendi*, 530 U.S. at 487–89 ("[*Almendarez-Torres*] represents at best an exceptional departure from the historic practice that we have described" and "it is arguable that *Almendarez-Torres* was incorrectly decided"); *Shepard v. United States*, 544 U.S. 13, 25–26 (2005); *Alleyne*, 570 U.S. at 112 n.1 ("[In *Almendarez-Torres*] we recognized a narrow exception to this general rule for the fact of a prior conviction. Because the parties do not contest that decision's vitality, we do not revisit it for purposes of our decision today."); *Erlinger*, 602 U.S. at 837–39 (lengthy discussion of critiques of *Almendarez-Torres*).

### b. The **Erlinger** *decision does not manifest an "extraordinary circumstance."*

After a new rule has been identified, the *Teague* analysis requires a court to determine whether the rule at issue is substantive or constitutes a "watershed" rule of criminal procedure and to be treated retroactively.[181]  If neither, the new rule is not applied to defendants convicted under the old rule.[182]  And it's very clear that retroactivity is the exception rather than the norm.[183]  Defendants maintain that their cases fall within that exception, asserting that their sentences were imposed in an illegal manner and that *Erlinger*, as either a substantive rule or a watershed procedural rule, constitutes an extraordinary circumstance excusing Rule 35(a)'s time bar.[184]

*Erlinger* isn't a new substantive rule.  Substantive rules include those that "alter the range of conduct" or "the class of persons that the law punishes" and may well apply retroactively on collateral review.[185]  For example, substantive rules

---

[181] *Teague*, 489 U.S. at 311.

[182] *Id.*

[183] *Powell*, 153 A.3d at 72 ("more than twenty-five years ago this Court recognized the *Teague* general rule of non-retroactivity"); *Vannoy*, 593 U.S. at 267.

[184] *See generally* Defs.' Op. Br.; Defs.' Reply Br. 2–3.

[185] *Summerlin*, 542 U.S. at 353; *Ring*, 536 U.S. at 609; *see Montgomery v. Louisiana*, 577 U.S. 190, 200–06 (2016) (explaining that when a state enforces a penalty barred by the Constitution, the resulting conviction or sentence is unlawful, but where procedural error occurred, a conviction or sentence may still be accurate and the confinement may still be lawful).

include decisions that decriminalize particular conduct,[186] or prohibit a category of punishment for a class of defendants—such as barring the death penalty for juveniles.[187] That definition doesn't fit here. *Erlinger*—like its progeny—didn't alter the range of conduct or class of persons subject to punishment, but instead reallocated factfinding authority from judge to jury, rendering it a procedural rule rather than a substantive one.[188]

*Erlinger* is a procedural rule, but it isn't a new "watershed" procedural rule. Procedural rules regulate only the manner in which a defendant's culpability is determined; they don't alter the scope of criminal liability or the range of punishment authorized by law.[189] Such rules include those that allocate factfinding responsibility—requiring, for example, that certain facts be found by a jury rather

---

[186] *Bousley v. United States*, 523 U.S. 614, 620–21 (1998) (discussing what it meant to "use" a firearm during the commission of a particular crime—finding the decriminalization was a new substantive rule that could be retroactively applied).

[187] *Roper v. Simmons*, 543 U.S. 551, 568–79 (2005); *see also Montgomery*, 577 U.S. at 200–06.

[188] *See Summerlin*, 542 U.S. at 353 ("[Defendant's argument] rest[s] entirely on the Sixth Amendment's jury-trial guarantee, a provision that has nothing to do with the range of conduct a State may criminalize. . . . Rules that allocate decisionmaking authority in this fashion are prototypical procedural rules," and such rules "alter[] the range of permissible methods for determining whether a defendant's conduct is punishable," rather than altering the substantive reach of the law). Delaware courts hold that claims alleging fact-finding defects in sentencing—such as those arising under "*Apprendi* and its progeny"—constitute challenges to sentences imposed in an illegal manner and their procedure. *See, e.g.*, *Benge v. State*, 945 A.2d 1099, 1102 (Del. 2008); *Quandt v. State*, 2007 WL 2229017, at *1 (Del. Aug. 3, 2007); *Shabazz v. State*, 2005 WL 1413234, at *1 (Del. June 14, 2005).

[189] *Summerlin*, 542 U.S. at 353 ("[R]ules that regulate only the manner of determining the defendant's culpability are procedural[,]" while, "[a] rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes.").

than a judge,[190] as well as rules governing evidentiary or trial procedures designed to improve accuracy without changing substantive criminal law.[191]

Under *Teague*, procedural rules don't apply retroactively unless they fall within the limited exception for "watershed" rules—those that are essential to the fundamental fairness and accuracy of the criminal proceeding.[192]  But in practice, that standard has never been satisfied by any new rule recognized post-*Teague* by the United States Supreme Court.[193]  From the start, the Court cautioned that it was "unlikely" such a rule would ever again emerge.[194]  And in the decades since, it has consistently declined to apply the exception.[195]  Most recently in *Vannoy*, the Court reaffirmed that in the more than thirty years since *Teague*, "the Court [ ] has rejected *every* claim that a new procedural rule qualifies as a watershed rule."[196]  In his

---

[190]  *Id.*; *see generally Ring*, 536 U.S. 584.

[191]  *Whorton v. Bockting*, 549 U.S. 406, 418–21 (2007).

[192]  *See Teague*, 489 U.S. at 311.  In the past, the United States Supreme Court has stated that there are two requirements to find a watershed rule:  "First, the rule must be necessary to prevent an impermissibly large risk of an inaccurate conviction.  Second, the rule must alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Whorton*, 549 U.S. at 418 (quoting *Summerlin*, 542 U.S. at 356; *Tyler v. Cain*, 533 U.S. 656, 665 (2001)) (cleaned up).

[193]  *Vannoy*, 593 U.S. at 258–59.

[194]  *Id.*

[195]  *See Teague*, 489 U.S. at 297; *Whorton*, 549 U.S. at 417; *Summerlin*, 542 U.S. at 352; *Vannoy*, 593 U.S. at 258–59.

[196]  *Vannoy*, 593 U.S. at 258–59, 268 (emphasis in original); *see also Beard v. Banks*, 542 U.S. 406, 407 (2004) (quoting *Sawyer v. Smith*, 497 U.S. 227, 242 (1990)) ("This Court has yet to find a new rule that falls under this exception.  In providing guidance as to what might do so, the Court has repeatedly, and only, referred to the right-to-counsel rule of *Gideon v. Wainwright*, which 'alter[ed] [the Court's] understanding of the bedrock procedural elements essential to the fairness

*Erlinger* dissent, Justice Kavanaugh—who authored *Vannoy*—opined that *Erlinger* also wouldn't apply retroactively.[197]

And other courts have uniformly concluded just that. "The *Teague* inquiry easily leads to the conclusion that *Erlinger* announced a new rule of criminal procedure that is not retroactive."[198] Courts—federal and state alike—have treated *Erlinger* as (1) a new (2) procedural rule (3) that does not qualify for *Teague*'s narrow watershed exception and therefore found that the decision does not apply retroactively.[199] The cases on which *Erlinger* rests were themselves treated the same way. This Court, the Third Circuit, and other courts held that *Apprendi*-line cases, including *Alleyne*, announced new procedural rules that do not apply retroactively

of a proceeding[.]'") (cleaned up); see also *Whorton*, 549 U.S. at 419 (stating that *Gideon* was "the only case that we have identified as qualifying under this exception").

[197] *Erlinger*, 602 U.S. at 859 n.3 (Kavanaugh, J., dissenting) ("For any case that is already final, the *Teague* rule will presumably bar the defendant from raising today's new rule in collateral proceedings.").

[198] *Ursery v. United States*, 2024 WL 4652209, at *4 (M.D. Tenn. Nov. 1, 2024).

[199] *United States v. Charles*, 2025 WL 3687935, at *2 (D. Mass. Dec. 19, 2025); *Ursery*, 2024 WL 4652209, at *4; *Moore v. United States*, 2025 WL 3214360, at *3–4 (M.D. Fla. Nov. 18, 2025); *Jackson v. United States*, 2025 WL 2771525, at *4 (W.D. Mich. Sept. 26, 2025); *Stackhouse v. United States*, 2024 WL 5047342, at *8 (M.D. Fla. Dec. 9, 2024); *United States v. Pettis*, 2025 WL 2194410, at *2 (D. Minn. Aug. 1, 2025); *Cuyler v. United States*, 2025 WL 1136295, at *6–7 (S.D. Ga. Mar. 21, 2025), *report and recommendation adopted*, 2025 WL 1136296 (S.D. Ga. Apr. 16, 2025); *United States v. Hansford*, 2025 WL 90240, at *3 (N.D. Ind. Jan. 14, 2025); *United States v. Abney*, 2024 WL 5055827, at *3 (E.D. Ky. Dec. 10, 2024); *see generally Wainwright v. State*, 411 So. 3d 392, 399–401 (Fla.), *cert. denied sub nom. Wainwright v. Florida*, 145 S.Ct. 2789 (2025) (employing Florida retroactivity doctrine); *People v. Rodney*, 224 N.Y.S.3d 332 (N.Y. Sup. Ct. 2024) (employing New York retroactivity doctrine).

on collateral review.[200]  And those decisions addressed facts that functioned as elements of the offense and directly affected the defendant's sentencing exposure,[201]—just like here.  That's telling.  If those rules weren't retroactive, *Erlinger* isn't either.

*Erlinger* simply falls short of proclaiming a "watershed" new rule:  it does not implicate a bedrock procedural element essential to the fundamental fairness of a criminal proceeding or prevent an impermissibly large risk of inaccurate convictions, but instead regulates only by whom certain facts about one's criminal past are determined.[202]  So, like all its relatives before it, *Erlinger* doesn't apply

---

[200]  *United States v. Swinton*, 333 F.3d 481, 487 (3d Cir. 2003) (finding *Apprendi* non-retroactive); *State v. Gattis*, 2005 WL 3276191, at \*15 (Del. Super. Ct. Nov. 28, 2005), *aff'd*, 955 A.2d 1276 (Del. 2008) (discussing the non-retroactivity of *Ring* and *Apprendi*).

*United States v. Winkelman*, 746 F.3d 134, 136 (3d Cir. 2014) (finding *Alleyne* nonretroactive); *United States v. Redd*, 735 F.3d 88, 91–92 (2d Cir. 2013) (same); *Simpson v. United States*, 721 F.3d 875, 876–77 (7th Cir. 2013) (same); *In re Payne*, 733 F.3d 1027, 1029–30 (10th Cir. 2013) (same); Perry L. Moriearty, Miller v. Alabama *and the Retroactivity of Proportionality Rules*, 17 U. Pa. J. Const. L. 929, 985 (2015) (noting then that "the Supreme Court has never itself addressed the retroactivity of the *Apprendi-Booker-Blakely* line of Sixth Amendment cases, several lower courts have and, with a few exceptions, have denied retroactivity.").

[201]  *See*, *e.g.*, *State v. Gattis*, 2005 WL 3276191, at \*15 (Del. Super. Ct. Nov. 28, 2005), *aff'd*, 955 A.2d 1276 (Del. 2008) ("Dismissing these precedents, Gattis asserts that his claim is different because *Apprendi* and *Ring* focused on the decision maker (judge v. jury) and not the standard of proof.  Gattis contends that this Court should find the burden of proof requirement of *Ring* to be retroactively applied since *In Re Winship*, 397 U.S. 358 (1970) and *Mullaney v. Wilbur* have been held to be retroactive. Those decisions involved respectively, retroactive application of the beyond a reasonable doubt standard of proof to every element of a criminal offense, and proof of absence of provocation in a homicide. Gattis' argument, which amounts to an assertion that the burden of proof provisions are necessarily 'watershed rules of criminal procedure' has been expressly rejected by three federal courts of appeal.  Respecting these federal court precedents, this Court does not venture to second guess the wisdom of the federal bench.") (internal citations omitted).

[202]  *See Whorton*, 549 U.S. at 418.

retroactively under *Teague* to defendants on collateral review. Given that, the Bellwether Defendants cannot hold its declaration up as an extraordinary circumstance triggering a need to now remedy their sentences.

### c. *Delaware law doesn't afford retroactivity in this instance.*

Defendants are correct that the required retroactivity analysis doesn't end with *Teague* and that Delaware courts retain authority, as a matter of state law, to afford broader retroactive relief than is required under the *Teague* doctrine.[203] Retroactivity in state postconviction proceedings is "primarily a question of state law."[204] So, Delaware could, if warranted, recognize *Erlinger* to have retroactive application.

Again, it is noteworthy that the states that have addressed the precise retroactivity question posed here have declined to find *Erlinger* has retroactive application.[205] Nothing in Delaware jurisprudence suggests that Delaware has

---

[203] *Powell*, 153 A.3d at 73; *Danforth*, 552 U.S. at 280–81.

[204] *Powell*, 153 A.3d at 73 (quoting *Danforth*, 552 U.S. at 280).

[205] *See, e.g.*, *Wainwright v. State*, 411 So. 3d 392, 397 (Fla.), *cert. denied sub nom. Wainwright v. Florida*, 145 S.Ct. 2789 (2025) (declining retroactive application under Florida's "fundamental significance" retroactivity test because the rule neither places conduct beyond the State's authority to punish nor undermines the reliability of prior convictions, but instead alters only the allocation of fact-finding authority for recidivism-related sentencing determinations); *People v. Rodney*, 224 N.Y.S.3d 332 (N.Y. Sup. Ct. 2024) (declining retroactive application under New York's retroactivity framework because the rule merely reallocates the decisionmaker for recidivism-related sentencing determinations—such as whether prior incarceration tolls the statutory look-back period for second-felony-offender status—without affecting the reliability of the determination of guilt and in light of decades of reliance on judicial resolution of those issues). *But see State v. Carlton*, 2024 WL 4896871, at *6 (N.J. Super. Ct. App. Div. Nov. 27, 2024), *superseded*, 328 A.3d 944 (N.J. Super. Ct. App. Div. 2024), *rev'd*, 349 A.3d 1284 (N.J. 2026)

adopted a broader retroactivity doctrine for procedural sentencing rules that would include *Erlinger*. The principal decisions in which Delaware courts have afforded retroactive relief beyond the federal baseline for procedural cases are *Rauf* and *Powell*.[206] Those cases addressed Delaware's former capital-sentencing statute and therefore implicated the heightened reliability concerns associated with death-penalty proceedings. But the retroactivity determination in those cases did not turn simply on death-penalty context. Rather, the Delaware Supreme Court's analysis focused on specific constitutional defects in the statutory scheme governing death eligibility and the effect those defects had on the reliability of the sentencing determination.[207] Understanding the nature of those defects is critical to understanding why the rule recognized in *Rauf* warranted retroactive application in *Powell*.

As *Powell* explained, the constitutional defect addressed in *Rauf* wasn't limited to the allocation of fact-finding authority between judge and jury.[208] Delaware's death-penalty statute also permitted the critical findings authorizing a death sentence to be made under a preponderance-of-the-evidence standard.[209] The

---

(observing that the New Jersey Attorney General didn't oppose certain retroactive application because of New Jersey's more forgiving "pipeline" case rule).

[206] 145 A.3d 430 (Del. 2016); 153 A.3d 69 (Del. 2016).

[207] *See generally Powell*, 153 A.3d at 73–75.

[208] *Id*. at 75.

[209] *Id*. at 76 ("The change in the burden of proof in *Winship* that was ruled retroactive in *Ivan V.*

retroactivity determination of *Powell* turned on the combined effect of two defects: the misallocation of factfinding responsibility *and* the use of a constitutionally insufficient burden of proof in a capital proceeding. Essentially, the issue was not simply that the wrong factfinder was used, but it was also—and more importantly— that the wrong burden of proof was defined by statute and used in the determination of the subject death sentences.

But no comparable defect exists here. It seems that all now agree that under *Erlinger*, a jury must be used where a sentencing enhancement depends on "occasionality" findings inherent in Delaware's recidivist statutes.[210] Thus, these cases are like *Powell* in the respect that the wrong factfinder was used. Yet, this case is dissimilar to *Powell* because Delaware judges reaching the recidivist determinations have used the correct standard under *Erlinger*: beyond a reasonable doubt.

For decades, if a criminal defendant contested the utility of a prior conviction to enhance his sentence, the defendant was "tried" thereon.[211] And Delaware law

---

is no different from the change in the burden of proof that occurred in *Rauf*.").

[210] Aug. 22, 2025 Hrg. Tr., 56–59.

[211] The language of this statute has been substantively unchanged since 1995. DEL. CODE ANN. tit. 11, § 4215(a) (2025):

> . . . If the defendant shall admit the previous conviction or convictions, the court may impose the greater punishment. If the defendant shall stand silent or if the defendant shall deny the prior conviction or convictions, the defendant shall be tried upon the issue of previous conviction . . .

has long treated the existence of prior convictions as a matter that must be established beyond a reasonable doubt when contested.[212] Here, nothing in the record suggests that a lesser standard was applied in these cases.[213]  Accordingly, the only issue raised by Defendants concerns the allocation of fact-finding authority—whether a judge or jury determines the existence of qualifying prior convictions.[214]

That isn't enough to incite retroactivity.  *Powell* requires more.  When analyzing this issue, *Powell* looked to the United States Supreme Court's decision

---

[212] *Coble v. State*, 2012 WL 1952293, at \*2 (Del. May 30, 2012) ("On a motion to declare a defendant an habitual offender, the State must prove beyond a reasonable doubt that each predicate offense satisfies the requirements of Section 4214."); *Hall v. State*, 788 A.2d 118, 128 (Del. 2001) ("[T]he State has the burden of proof in establishing that each predicate offense meets the requirements of Section 4214 and that the State must prove its case beyond a reasonable doubt."); *id.* at 128 n.54 (observing that Delaware requires "[t]his standard of proof [which] appears to be the majority rule among the states") (collecting cases); *see also Walker v. State*, 790 A.2d 1214, 1221 n.26 (Del. 2002) (instructing that the applicable statute "contemplates a separate hearing on habitual criminal status prior to sentencing in which the prior convictions are subject to a trial adjudication") (cleaned up); *Morales v. State*, 696 A.2d 390, 395 (Del. 1997) (adopting the beyond a reasonable doubt burden for proof of prior convictions used in habitual criminal proceedings).

[213] Nor do Defendants demonstrate otherwise. Aug. 22, 2025 Hrg. Tr. 20–21, 28–29.  Delaware law has treated the existence of prior convictions as a matter that must be established beyond a reasonable doubt when contested, and Delaware courts recognized that principle in habitual-offender proceedings under *Morales*, 696 A.2d at 395 (adopting the beyond a reasonable doubt burden for proof of prior convictions used in habitual criminal proceedings); *Hall*, 788 A.2d at 127–28 ("*Morales* holds that the State has the burden of proof in establishing that each predicate offense meets the requirements of Section 4214 and that the State must prove its case beyond a reasonable doubt."); *Coble*, 2012 WL 1952293, at \*2 ("On a motion to declare a defendant an habitual offender, the State must prove beyond a reasonable doubt that each predicate offense satisfies the requirements of Section 4214.").  Defendants agree that judges are presumed to know the law and apply it correctly. *See* Aug. 22, 2025 Hrg. Tr. 20–21; *State v. Jackson*, 2010 WL 2179874, at \*10 (Del. Super. Ct. May 28, 2010) (quoting *Walton v. Arizona*, 497 U.S. 639, 653 (1990)) ("'Trial judges are presumed to know the law and to apply it in making their decisions.' This presumption applies as well to evidence considered by a trial judge in reaching a sentencing decision."); *see also State v. Brisco*, 2024 WL 1555494, at \*13 (Del. Super. Ct. Apr. 9, 2024), *aff'd,* 338 A.3d 1291 (Del. 2025).

[214] *See generally* Defs.' Op. Br.; Defs.' Reply Br.; Aug. 22, 2025 Hrg. Tr.

in *Schriro v. Summerlin*.[215] *Summerlin* held that *Ring* was not retroactive precisely because it involved only the identity of the decisionmaker and not the burden of proof governing the determination (similar to here).[216] *Powell* distinguished *Summerlin* on the ground that *Rauf* involved more: it corrected both who made the findings and the standard of proof under which they were made.[217] Where the asserted rule affects only who makes the determination and does not correct a constitutionally insufficient burden of proof, Delaware's sensible retroactivity doctrine treats the rule as a normative procedural change that does not warrant disturbance of final judgments.[218]

### 4. The Bellwether Defendants' applications are time-barred.

All of that brings the Court back to the last two Bellwether Defendants, Messrs. Wright and Turner, and why the retroactivity analysis matters.[219] At bottom, they challenge the manner in which their habitual-offender proceedings were conducted, arguing that certain facts relevant to their recidivist enhancements should

---

[215] *Powell*, 153 A.3d at 73–74.

[216] *See Summerlin*, 542 U.S. at 351 n.1 ("Because Arizona law already required aggravating factors to be proved beyond a reasonable doubt, that aspect of *Apprendi* was not at issue.").

[217] *Powell*, 153 A.3d at 73–74.

[218] *See id.*; *see, e.g.*, *Richardson v. State*, 3 A.3d 233, 239 (Del. 2010); *State v. McGriff*, 2006 WL 1515831, at *4 (Del. Super. Ct. Jan. 9, 2006), *aff'd*, 929 A.2d 784 (Del. 2007); *Steckel v. State*, 882 A.2d 168, 171 (Del. 2005); *Bailey*, 588 A.2d at 1129.

[219] Of course, if above the Court misapprehended whether *Erlinger* is implicated at all in Messrs. Deputy and Gee's cases, this matters to them also and this retroactivity analysis would be equally dispositive of their claims.

have been found by a jury. This is the same species of problem—alleged defects in habitual-offender or other sentencing hearings—that our courts have treated as claims that a sentence was imposed in an illegal manner, not that the sentence itself is illegal.[220] And claims of that kind fall within Rule 35(a)'s ninety-day limitation.[221]

Mr. Wright and Mr. Turner were sentenced many years ago, and their convictions have long been final. To proceed, they must demonstrate extraordinary circumstances sufficient to excuse the delay in initiating these Rule 35(a) proceedings.[222]

They cannot. Mr. Wright and Mr. Turner argue that the findings of their status as habitual offenders were deficient from the day of sentencing.[223] And both have previously challenged their sentences and habitual-offender designations through multiple filings, yet never raised the argument they now advance.[224] Were they merely invoking the straightforward application of then-extant law—as they allege

---

[220] *Walley*, 2007 WL 135615, at *1; *McLeaf*, 2007 WL 2359554, at *1; *St. Louis*, 2007 WL 2810991, at *2; *Washington v. State*, 2023 WL 2028713, at *1–2 (Del. Feb. 15, 2023).

[221] Del. Super. Ct. Crim. R. 35(a)–(b); *Walley*, 2007 WL 135615, at *1.

[222] Del. Super. Ct. Crim. R. 35(a)–(b); *Walley*, 2007 WL 135615, at *1.

[223] *See generally* Defs.' Op. Br.; David R. Wright's Mot. to Vacate Illegal Sentence, *State v. David R. Wright*, Crim. ID No. 0802023870 (Del. Super. Ct. Dec. 9, 2024) (D.I. 110); Orin L. Turner's Mot. for Post Conviction Pursuant to Del. Super. Ct. Crim. R. 61, *State v. Orin L. Turner*, Crim. ID. No. 0609012387A (Del. Super. Ct. Nov. 4, 2024) (D.I. 163).

[224] *See, e.g.* David R. Wright's Various Post-Sentencing Motions, *State v. David R. Wright*, Crim. ID No. 0802023870 (D.I. 52, D.I. 87, D.I. 93, D.I. 104, D.I. 106); Orin L. Turner's Various Post-Sentencing Motions, *State v. Orin L. Turner*, Crim. ID. No. 0609012387A (D.I. 76, D.I. 110, D.I. 125, D.I. 128, D.I. 149).

to avoid the retroactivity quandary—then nothing prevented them from raising it within Rule 35(a)'s ninety-day window.

"In order to uphold the finality of judgments, a heavy burden is placed on the defendant to prove extraordinary circumstances when a Rule 35 motion is filed outside of ninety days of the imposition of a sentence."[225] Mr. Wright and Mr. Turner fail to carry that burden here. The *Erlinger* decision does not apply retroactively and is not an extraordinary circumstance that overcomes Rule 35(a)'s time bar.[226]

## C. WERE THE COURT REQUIRED TO FURTHER EXAMINE DEFENDANTS' *ERLINGER* CLAIMS THEY WOULD BE SUBJECT TO HARMLESS ERROR REVIEW.

Some courts have found it unnecessary to address the retroactivity question embedded in *Erlinger*-based challenges. Instead, they have reviewed purported *Erlinger* errors for harmlessness.[227] And when doing so, they engage the familiar harmless-error analysis announced in *Chapman v. California*[228] and long employed

---

[225] *State v. Diaz*, 2015 WL 1741768, at *2 (Del. April 15, 2015) (explaining that Rule 35(b)'s time-bar and the exception—which are applicable in this sort of 35(a) proceeding—must be examined as a part of this Court's analysis).

[226] *See, e.g.*, *State v. Thomas*, 220 A.3d 257, 261–63 (Del. Super. Ct. 2019) (noting that a favorable change in statutory sentencing law occurring after an inmate's sentence was imposed does not constitute an extraordinary circumstance allowing for an untimely Rule 35 motion).

[227] *See, e.g.*, *United States v. Rivers*, 134 F.4th 1292, 1305 (11th Cir. 2025) ([W]e hold, as all our sister circuits to address the issue have, that we review *Erlinger* errors for harmlessness.").

[228] *Chapman v. California*, 386 U.S. 18, 23–24 (1967) (explaining that "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error" but so long as the error was not within one of those categories, the "beneficiary of the constitutional error" must only "prove beyond a reasonable doubt" that the error was harmless).

by the Delaware Supreme Court.[229] This has been true for those defendants who had pleaded guilty[230] as well as those who did not.[231]

Again, the framework for such review rests in settled harmless-error principles. And in the *Erlinger* decision itself, two justices, writing separately, expressed that harmless-error review would be appropriate for alleged *Erlinger* violations.[232] In turn, federal courts of appeals have since followed that course, explaining that, "'[f]ailure to submit a sentencing factor to the jury' that enhanced the defendant's final sentence 'is not structural error' that 'requir[es] automatic reversal.'"[233] Rather, the reviewing court—depending on the circumstance—asks whether the government has shown beyond a reasonable doubt that the result would have been the same had the defendant known of the *Erlinger* requirement when he

---

[229] *See Dawson v. State*, 608 A.2d 1201, 1204–05 (Del. 1992); *Jewell v. State*, 340 A.3d 562, 574 (Del.), *cert. denied*, 146 S.Ct. 315 (2025).

[230] *See United States v. Brown*, 136 F.4th 87, 97 (4th Cir. 2025) (articulating the government's harmless-error burden in an *Erlinger* case where the defendant pled guilty); *United States v. Butler*, 133 F.4th 584, 589 (5th Cir. 2024); *United States v. Campbell*, 122 F.4th 624, 630–31 (6th Cir. 2024); *United States v. Johnson*, 114 F.4th 913, 917 (7th Cir 2025).

[231] *United States v. Robinson*, 2024 WL 4448849, at *1 (8th Cir. Oct. 9, 2024); *Rivers*, 134 F.4th at 1305–07.

[232] *Erlinger*, 602 U.S. at 849–50 (Roberts, C.J., concurring) ("[V]iolations of that right are subject to harmless error review."); *id.* at 859 (Kavanaugh, J., dissenting) ("[T]he relevant appellate court can apply harmless-error analysis."); *see Rivers*, 134 F.4th at 1305 (11th Cir. 2025) (quoting *Neder v. United States*, 527 U.S. 1, 18 (1999)) ("That view is consistent with the Supreme Court's previous rulings that errors that 'infringe upon the jury's factfinding role' are 'subject to harmless-error analysis.'").

[233] *Campbell*, 122 F.4th at 630 (quoting *Washington v. Recuenco*, 548 U.S. 212, 218, 222 (2006); *Neder*, 527 U.S. at 18).

entered his plea or the jury decided the issue if there were a trial.[234]  State courts have, as well, begun to engage similar harmlessness analyses of *Erlinger*-type error.[235]

Defendants resist the notion that this Court can itself engage a harmless error analysis.  In their view, only an appellate court can.[236]  Not so.

Remember, at this point the Court is addressing these purported *Erlinger* errors at the postconviction stage.  Resultingly, were it necessary, this Court could proceed in the same manner utilizing the same articulated test, analytical framework, and type of evidence to decide whether the State has carried its burden of demonstrating any such error was harmless.  Indeed, the Court's Criminal Rule 52(a) provides for just such review.[237]

In short, were one to assume *Erlinger* warranted retroactive application and that such error was detected in a given case, the Court might deny Rule 35(a) relief

---

[234] *Brown*, 136 F.4th at 97; *Rivers*, 134 F.4th at 1305; *see Neder*, 527 U.S. at 18 ("Such errors, no less than the failure to instruct on an element in violation of the right to a jury trial, infringe upon the jury's factfinding role and affect the jury's deliberative process in ways that are, strictly speaking, not readily calculable. We think, therefore, that the harmless-error inquiry must be essentially the same: Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?").

[235] *See, e.g. State v. Otis*, __ S.W.3d __, __ , 2026 WL 1810031, at *3 (Mo. June 23, 2026); *State v. Carlton*, 349 A.3d 1284, 1291–93 (N.J. 2026).

[236] *See generally* Defs.' Op. Br.; Defs.' Reply Br.; Aug. 22, 2025 Hrg. Tr.

[237] Del. Super. Ct. Crim. R. 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."); *see id.* at 54(a) ("These rules apply to all criminal proceedings in Superior Court . . .").

if the record established beyond a reasonable doubt that the asserted defect did not affect the sentence actually imposed.[238]  Given that these Defendants all fail, in one critical way or another, to clear the earlier non-retroactivity hurdles, a harmless-error examination isn't engaged here.

**D. IF ANY *ERLINGER* MOVANT WERE DUE RELIEF, THE PROPER REMEDY WOULD BE A NEW SENTENCING HEARING.**

Finally, Defendants contend that the only appropriate remedy for what they characterize as *Erlinger*-infected enhancements is acquittal of the sentencing enhancement.[239]  Not so.  Assuming *arguendo*, that the Court's foregoing analysis of *Erlinger*'s effect on those already serving recidivist-statute-enhanced sentences were incorrect on each point, the available remedy for the *Erlinger* defect is resentencing.

An acquittal occurs when there has been a ruling that "relate[s] to the ultimate question of guilt or innocence" by determining that "the prosecution's proof is

---

[238]  *Brown*, 136 F.4th at 97; *Robinson*, 2024 WL 4448849, at *1; *Carlton*, 349 A.3d at 1291–93; *Neder*, 527 U.S. at 18.  *See People v. Taylor*, 224 N.Y.S.3d 345, 362 (N.Y. Sup. Ct. 2024) (finding harmless-error review appropriate where the question under New York's Persistent Violent Felony Offender involved "a simple mathematical calculation" and was far "more straightforward than that considered in *Erlinger*").  The same is true of all of the Delaware recidivist statutes mentioned herein.  None include anything close to the ACCA's complex "'different-occasions requirement,' which can involve 'an examination of a 'range' of facts, including whether the defendant's past offenses were 'committed close in time,' whether they were committed near to or far from one another, and whether the offenses were 'similar or intertwined' in purpose and character." *Id.* (citing *Erlinger*, 602 U.S. at 828, 848; quoting *Wooden v. United States*, 595 U.S. 360, 369 (2002)).

[239]  Hearing Tr. 38–46; Op Br. 38–39.

insufficient to establish criminal liability for an offense."[240]   A defect in the sentencing process doesn't result in an acquittal because it doesn't finally resolve the defendant's liability for the underlying crime or the proper punishment.[241]   As the Delaware Supreme Court has also recognized, "a sentence does not have the qualities of constitutional finality that attend an acquittal."[242]

*Erlinger* itself demonstrates why resentencing is the proper remedy.  After the Seventh Circuit concluded that two of Mr. Erlinger's prior convictions did not qualify under the ACCA, the district court resentenced him.[243]   Mr. Erlinger then challenged that new sentence before the United States Supreme Court, arguing that the ACCA's "different occasions" determination had to be made by a jury.  The constitutional violation complained-of was not his earlier second sentencing

---

[240] *Evans v. Michigan*, 568 U.S. 313, 318–19 (2013) (quoting, in part, *United States v. Scott*, 437 U.S. 82, 98 (1978)) (alteration in original); *Capano v. State*, 889 A.2d 968, 980–85 (Del. 2006); *see Martin v. State*, 308 A.3d 1121, 1133 (Del. 2023) (quoting *White v. State*, 576 A.2d 1322, 1322 (Del. 1990)) (noting that "'that double jeopardy is not implicated when a defendant has no legitimate expectation of finality in his original sentence.'"); *see also People v. Gregg*, 576 P.3d 725, 733–34 (Colo. 2025) ("[W]ithout a second proceeding, there is no double jeopardy concern.").

[241] *Capano*, 889 A.2d at 982–84 ("Under double jeopardy principles, an acquittal on the merits by the sole decisionmaker in the proceeding is final and bars retrial on the same charge."); *see Martin v. State*, 308 A.3d at 1133; *Monge v. California*, 524 U.S. 721, 728 (1998) (quoting *Gryger v. Burke*, 334 U.S. 728, 732 (1948)) ("Historically, we have found double jeopardy protections inapplicable to sentencing proceedings . . . . An enhanced sentence imposed on a persistent offender thus 'is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes' but as 'a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.'").

[242] *White v. State*, 576 A.2d at 1326 (quoting *United States v. DiFrancesco*, 449 U.S. 117, 134 (1980)).

[243] *Erlinger*, 602 U.S. at 826–28.

proceeding.[244] It was the use of an unconstitutional non-jury procedure at that proceeding. And just as on the first go, the appropriate remedy would not be to foreclose the enhancement altogether, but to afford Mr. Erlinger a new sentencing conducted under a constitutionally permissible procedure.[245]

The same principle governs under Delaware law. When a sentencing proceeding is procedurally defective, the remedy is resentencing—not acquittal of the enhancement. Delaware courts have followed that approach where capital aggravating circumstances were not unanimously found during a first sentencing proceeding because of the then-extant prescribed statutory procedures.[246] In such instance, the remedy was a new sentencing hearing, not a judgment barring the State from again seeking the enhancement. Resentencing is a continuation of the original criminal case conducted to impose a lawful sentence.[247] A procedural defect in the sentencing process does not eliminate the historical facts that may support an enhanced sentence; it requires only that those facts, if the Constitution now requires them to be determined differently, be established through the constitutionally prescribed procedure.[248]

---

[244] *See generally Erlinger v. United States*, 602 U.S. 821 (2024).

[245] *See Erlinger*, 602 U.S. at 849 (remanding for further proceedings consistent with the opinion).

[246] *Capano*, 889 A.2d at 980–85.

[247] *Id.*; *White*, 576 A.2d at 1328–29.

[248] *See, e.g.*, *Capano*, 889 A.2d at 980–85; *see White*, 576 A.2d at 1328–29 (finding that "[a]fter a related sentence has been vacated on appeal, a trial judge may resentence a defendant up to the

Since *Erlinger*, no *Erlinger*-induced resentencings have occurred in this Court. But, since *Erlinger*, the Court has been regularly conducting bifurcated proceedings as suggested in that case and agreed by the parties here is appropriate.[249] Even if Delaware's procedural scheme wasn't designed with *Erlinger*-compliant sentencing (or resentencing) proceedings in mind, her courts possess inherent procedural authority to fashion such to effectuate statutory commands rather than frustrate them[250] while protecting important constitutional rights.[251] Thus, if ever needed, the correct remedy of resentencing through a constitutionally permissible procedure could be easily accommodated.

## V. CONCLUSION

*Erlinger* resolved a limited question about who must decide a narrow fact

---

combined duration of the original sentences without violating the constitutional prohibition against double jeopardy").

[249] *Erlinger*, 602 U.S. at 847; Aug. 22, 2025 Hrg. Tr. 28, 56–59. The Court also notes that indictment practice has changed—the State now outlines the sentence enhancing priors within the indictment itself and by accompanying separate notice. This, too, is a positive change that ensures the integrity of any conviction and resulting sentence and aids greatly in the management of the now-more-complex bifurcated proceedings.

[250] *See, e.g.*, *State v. Juvenile*, 347 A.2d 670 (Del. Super. Ct. 1975); *Pratt v. State*, 486 A.2d 1154 (Del. 1983); *see also* DEL. CODE ANN. tit. 11, § 4215 (providing a procedural statute under which one may be "*tried* upon the issue of [his or her] previous conviction") (emphasis added); *State v. Wright*, 821 A.2d 330, 333 (Del. Super. Ct. 2003) ("[T]he Court may exercise its inherent power 'to manage its affairs and to achieve the orderly disposition of its business.'").

[251] *See, e.g., Monceaux v. State*, 51 A.3d 474, 477 (Del. 2012) (requiring this Court to use a bifurcation procedure for trials under 11 *Del. C.* § 777A—defining a distinct crime for a registered sex offender to knowingly commit a sexual offense against a child).

related to recidivist sentencing, and it "decide[d] no more than that."[252]  Defendants' sentences were lawful when imposed and have long since existed as valid final judgments.  There is nothing derived from *Erlinger* that requires the Court to revisit them now.

Accordingly, Defendants' Motion to Vacate Sentences or, in the Alternative, to Certify a Question of Law is **DENIED**.

**IT IS SO ORDERED.**

/s/ *Paul R. Wallace*

Paul R. Wallace, Judge

---

[252] *Erlinger*, 602 U.S. at 833.